STATE of Wisconsin, Plaintiff-Respondent,

v.

Pamela WHITE, Defendant-Appellant.†

Court of Appeals

*No. 93–0008–CR. Submitted on briefs October 4, 1993.—Decided November 10, 1993.*

(Also reported in 509 N.W.2d 434.)

†Petition to review filed.

205

On behalf of the defendant-appellant, the cause was submitted on the brief of *Hans P. Koesser* of Kenosha.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Mary E. Burke*, assistant attorney general.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Michael E. Nieskes*, acting district attorney, and *Sharon A. Riek*, assistant district attorney.

Before Brown, Nettesheim, and Snyder, JJ.

BROWN, J. Pamela White was convicted by jury of failure to cause her daughter to attend school regularly, contrary to sec. 118.15, Stats. (1989-90).[1] She raises four issues on appeal. She mainly contends that sec. 118.15 is unconstitutionally vague because the phrase "attend school regularly" does not give a person of ordinary intelligence fair notice of the conduct required or prohibited. We hold that sec. 118.15, viewed as a whole, explains what the term "attend school regularly" means. We affirm on this issue and all other issues raised.

---

[1] All references to Wisconsin Statutes are to the 1989-90 statutes.

White is the mother of C.W. A criminal complaint was served on White, charging her with failing to cause her child to attend school regularly, the violation of which is a misdemeanor. Section 118.15(5)(a), Stats. The complaint charged that between September 14, 1990 and December 6, 1990, C.W. was absent without excuse eight times. It alleged that White was sent repeated notices to meet and resolve the problem, but the notices were ignored. During jury trial, the state produced evidence supporting the complaint and evidence that absences continued despite warning letters to her about the problem. White acknowledged receiving these letters. White's major defense, specifically recognized by sec. 118.15(5)(a), was that she was unable to comply with the law because of her child's disobedience.[2] The jury convicted White and she appeals. Further facts will be forthcoming as necessary.

We first discuss White's argument that sec. 118.15(1)(a), Stats., is unconstitutionally vague. The statute reads:

> **118.15 Compulsory school attendance.** **(1)(a)** Except as provided under pars. (b) to (d) and sub. (4), unless the child is excused under sub. (3) or has graduated from high school, any person having under control a child who is between the ages of 6

---

[2] Section 118.15(5)(a), Stats., reads, in pertinent part, as follows:

> [W]hoever violates this section may be fined not more than $500 or imprisoned for not more than 30 days or both. . . . In a prosecution under this paragraph, if the defendant proves that he or she is unable to comply with the law because of the disobedience of the child, the action shall be dismissed and the child shall be referred to the court assigned to exercise jurisdiction under ch. 48.

and 18 years shall cause the child to attend school regularly during the full period and hours, religious holidays excepted, that the public or private school in which the child should be enrolled is in session until the end of the school term, quarter or semester of the school year in which the child becomes 18 years of age.

The elements are thus listed as follows. The statute applies to (1) any person having control of a child between six and eighteen years old. It mandates that person to (2) cause the child to attend school regularly until the end of the public or private school term, quarter or semester that the child becomes eighteen. Finally, it excuses (3) religious holidays and statutorily provided exceptions.

White's constitutional argument concerns one phrase of one of these elements—that the person shall "cause the child to attend school regularly." She argues that the word "regularly" is not defined in the statutes. Therefore, "regularly" can mean an unexcused absence of one day, ten days or twenty days. Or it can mean every single minute of every single hour of every single day that school is in session. She asserts that if this latter interpretation is the meaning of the statute, then an action could be brought against a parent if a child missed as little as three minutes in an entire semester and that absolute perfect attendance is therefore an absurd reading of the statute. She belittles the trial court's jury instruction defining "regular" as "constant not varying" as unhelpful. She sums up by arguing that the phrase "attend school regularly" does not give a person of ordinary intelligence fair notice of the conduct required.

The applicable standards and presumptions in analyzing unconstitutional vagueness challenges are set forth in *State v. Pittman,* 174 Wis. 2d 255, 276-77, 496 N.W.2d 74, 83, *cert denied,* 114 S. Ct. 137 (1993). The presumption is that the statute is constitutional and the challenger has the burden of showing *beyond a reasonable doubt* that the statute is unconstitutional. *Id.* at 276, 496 N.W.2d at 83.

There are two prongs to a vagueness challenge. First, the statute must "sufficiently warn[ ] persons 'wishing to obey the law that [their] . . . conduct comes near the proscribed area.' " *Id.* (quoting *State v. Tronca,* 84 Wis. 2d 68, 86, 267 N.W.2d 216, 224 (1978)). Second, the statute must provide direction to persons charged with enforcing the law so that they can do so without creating or applying their own standards. *Id.* A fair degree of definiteness is all that is required to uphold a statute, and a statute will not be voided merely by showing that the boundaries of the area of proscribed conduct are somewhat hazy. *State ex rel. Hennekens v. City of River Falls Police & Fire Comm'n,* 124 Wis. 2d 413, 420, 369 N.W.2d 670, 674 (1985).

Our initial task is to review sec. 118.15, Stats., to see whether it has that "fair degree of definiteness." We begin with the section's heading. While a heading is not part of the law, it can be persuasive in the interpretation given to the statute. *Pure Milk Prods. Coop. v. National Farmers Org.,* 64 Wis. 2d 241, 253, 219 N.W.2d 564, 571 (1974). The heading for this statute reads: "Compulsory school attendance." Section 118.15. A person of fair intelligence would read this heading to say that school attendance is "mandatory."

213

Next, the statute breaks down into various subsections and paragraphs. The first subsection alerts the reader that there are numerous exceptions spelled out in the various subsections and paragraphs. The first subsection goes on to say that the statute is applicable to "any person having under control a child who is between the ages of 6 and 18." Section ·118.15(1)(a), Stats. By this language, a person of ordinary intelligence knows that if he or she has a child within these age parameters, then the statute pertains to that person. Obviously by reading this far, a person of ordinary intelligence knows that the statute involves compulsory school attendance and is directed at those who have control of a child.

Next, the statute reads that the person in control of the child "*shall cause* the child to attend school." *Id.* (emphasis added). This is another reference to the mandatory nature of the statute. It leaves no discretion to the person in control. One of ordinary intelligence knows that this statute commands a person having control of a child to do something.

Next, the statute tells what it is that the person is required to do. It states that the person shall cause the child to "attend school regularly." *Id.* While the term "regularly" is not defined in the statute, the common and approved meaning of a nontechnical word may be determined by reference to a recognized dictionary. *State v. McCoy,* 139 Wis. 2d 291, 296, 407 N.W.2d 319, 322 (Ct. App. 1987), *aff'd,* 143 Wis. 2d 274, 421 N.W.2d 107 (1988). "Regularly" means "on a regular basis: at regular intervals" and "in a regular manner." WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 992 (1989). In

turn, "regular" means "[c]onstant; not varying," "[c]ustomary, usual, or normal" and "[c]onforming to set procedure, principle, or discipline." THE AMERICAN HERITAGE DICTIONARY 1041 (2d college ed. 1982). Thus, a person of ordinary intelligence would read the term "regularly" to mean to attend school "constantly and uniformly."

Then, the statute explains *when* the child must constantly attend school. The statute says that attendance is required "during the full period and hours, religious holidays excepted, that the public or private school . . . is in session until the end of the school term, quarter or semester of the school year in which the child becomes 18 years of age." Section 118.15(1)(a), Stats. By this language, a person of ordinary intelligence who controls a child knows that attendance is compulsory during any time school is in session until that child is eighteen, except for religious holidays, and that a person in control of the child has the obligation to make sure that the child constantly attends.

There are exceptions to the requirement of causing the child to attend constantly and uniformly. Religious holidays are one exception specifically noted. Others are cross-referenced. Sections 118.15(1)(b) through (d), Stats., discuss certain vocational programs, curriculum modifications and high school equivalency programs. Also cross-referenced is sec. 118.15(3), establishing excuses for the child who is temporarily ill and the child who is "excused by the school board in accordance with the school board's written attendance policy under s. 118.16(4) and with the written approval of the child's parent or guardian." A person of ordinary intelligence having control of a child would therefore be alerted that the statute mandates school boards to

have a written attendance policy and that the statute pertaining to this policy is found in sec. 118.16(4)(a), Stats.

Section 118.16(4)(a), Stats., requires each school board to "establish a written attendance policy specifying the reasons for which pupils may be permitted to be absent from a public school under s. 118.15." Section 118.16(4)(d) requires each school board to "provide each pupil enrolled in the public schools in the district with a copy of the policies established . . . and shall file a copy of the policies in each school in the district. In addition, the school board shall make copies available upon request."

Thus, a person of ordinary intelligence would know from reading the statutes that not only does the statute require constant and uniform attendance, but the school board is required to establish a written policy and is also required to provide each child in the district with a copy. If the person of ordinary intelligence does not have a copy, he or she may obtain one. The person is thus on notice that constant, uniform attendance is required and that school policies outlining the scope and breadth of what constant, uniform attendance consists of are available to that person.

Because sec. 118.15, Stats., cross-references sec. 118.16, Stats., the person of ordinary intelligence will be directed to that statute for further guidance. The statute lays out a stepping-stone of school attendance enforcement in the order of severity. Of particular interest is its definition of truancy. Truancy is defined in sec. 118.16(1)(c) as follows:

216

"Truancy" means *any absence* of *part or all of one or more days* from school during which the school attendance officer, principal or teacher has not been notified of the legal cause of such absence by the parent or guardian of the absent pupil, and also means intermittent attendance carried on for the purpose of defeating the intent of s. 118.15. [Emphasis added.]

A person of ordinary intelligence would deduce from this that any unexcused absence of part of a day or all of one day is a deviation from the constant and uniform. It is a truancy. Five such occasions out of ten consecutive days or part or all of ten or more days in a semester means that the child is termed a "habitual truant." Sections 118.16(1)(a)1, 2. Less than that is nonetheless a truancy. This is further notice that any absence is considered irregular.

■

A person of ordinary intelligence would read on. The same statute provides that when a truancy occurs, the school attendance officer shall notify the parent or guardian of the truancy. Section 118.16(2)(c), Stats. This person of ordinary intelligence would also know that no misdemeanor complaint may be filed against him or her for violating sec. 118.15, Stats., unless all of the following have taken place or an attempt has been made to these effects: The school attendance officer must have met with or attempted to meet with the person in control. Section 118.16(5)(a). The opportunity for educational counseling which would "resolve the child's truancy" must be provided. Section 118.16(5)(b). The child must be evaluated to determine whether any learning problems exist, and if so, appropriate action must be taken. Section 118.16(5)(c). An investigation

into the possibility of "social problems" must be conducted. Section 118.16(5)(d).

From reading not just sec. 118.15(1)(a), Stats., but the rest of sec. 118.15 and also the cross-referenced sec. 118.16, Stats., a person of ordinary intelligence would know the following. Attendance is compulsory absent statutorily defined or school board sanctioned exceptions. A person in control must see to it that the child attends unless there is a statutory excuse. If the child does not attend, the child is truant. Before the person in control can be prosecuted, there must be notice to the person in control, an opportunity for a meeting to resolve the problem, and other possible avenues leading to resolution. The statute is not vague for lack of sufficient warning to persons wishing to obey the law. *See Pittman*, 174 Wis. 2d at 276, 496 N.W.2d at 83.

Nor is it vague for those who must enforce and apply the law. The standard is clear. Attendance without statutory excuse or excuse by the school board is compulsory. Failure to attend even a period of the day not excused is considered a truancy. However, the enforcers of the law may not arbitrarily prosecute the person in control. They must notify the person in control and attempt to meet with that person to resolve the situation. Under these guidelines, we seriously doubt that prosecutors would be able, much less willing, to apply the law in an unreasonable manner. White fails her burden to convince the court that she meets either one of the two prongs of the vagueness test.

White raises three other issues which we will address in turn. She claims that the trial court erred in failing to instruct the jury that failure to "attend school

regularly" for purposes of sec. 118.15(1)(a), Stats., means "habitual truant" as defined in sec. 118.16(1)(a), Stats. As explained above, a prosecution for a misdemeanor under sec. 118.15 may take place after a simple truancy and the notification, meeting and resolution stages have been unsuccessful. Habitual truancy is more severe than simple truancy. In fact, a habitual truancy subjects the child to juvenile court jurisdiction. *See* secs. 48.13(6), 48.02(9m) and 118.16(6)(b), Stats. The trial court properly refused the instruction.

White also argues that the trial court erred in permitting the state to introduce evidence of the child's attendance outside of the period that the child was alleged to have been truant. In other words, she complains that "other acts evidence" was improperly used. She argues that the trial court found the evidence relevant to show "motive, intent, knowledge, absence of mistake, et cetera" without explaining why each of these reasons applied to the facts of the case. We disagree that the trial court failed to use a reasoning process in arriving at its decision. The trial court noted White's defense to be saying that "we are not denying the facts of what happened, but we assert that the child was not under our control, the child was uncontrollable." The trial court then concluded that the other acts evidence was admissible to counter the defense by showing that this is a consistent pattern going back to kindergarten and that, during the entire time, the mother did not meet with or interact with school officials to resolve the problem. White's claim fails.

Finally, White complains that the criminal complaint did not give her fair notice of the charges and a meaningful opportunity to defend, thus violating her

right to due process of law. The basis of this argument is that the complaint used the term "regularly," thus providing her insufficient notice. For the reasons stated in rejecting her vagueness argument, we reject this argument as well.

*By the Court.*—Judgment and order affirmed.