Connie L. LENTZ and Thomas J. Lentz, her husband, Plaintiffs-Appellants,

v.

David N. YOUNG, Defendant-Respondent.†

Court of Appeals

*No. 94–3335. Oral argument May 2, 1995.—Decided June 20, 1995.*

(Also reported in 536 N.W.2d 451.)

†Petition to review denied.

460

For the plaintiffs-appellants there were briefs and oral argument by *Mary Taylor Lokensgard* of *Robinson, Robinson, Peterson, Berk & Cross* of Appleton.

For the defendant-respondent there was a brief and oral argument by *Thomas W. Johnson* of *Werner, Lindgren & Johnson, S.C.* of New London.

Before Cane, P.J., LaRocque and Myse, JJ.

MYSE, J. Connie and Tom Lentz (Lentz) appeal a summary judgment dismissing their tort claims against Lentz's employer, David Young. Lentz contends that Young waived the defense of exclusivity under the Worker's Compensation Act (WCA) by failing to raise it in his pleadings and that the trial court erred by hearing Young's motion for summary judgment after the time permitted by § 802.08(1), STATS., and the court's scheduling order. Lentz further argues that the trial court erred by concluding that the WCA bar precluded her sexual harassment action against Young. Because we conclude that an employer's intentional sexual harassment of an employee is not an "accident" within the parameters of the WCA, we reverse the trial court's judgment and remand the cause for further proceedings.

## FACTS

Lentz began working for Young as a waitress in 1983 or 1984 and continued in that position for approximately six years. On July 13, 1990, Lentz filed a complaint against Young alleging that he threatened, assaulted and touched her in an offensive manner over the course of a one-year period. Lentz further alleged that Young engaged in a continuous series of actions that constituted an offensive invasion of her privacy.

Lentz alleged that Young's actions caused her emotional distress and that she was required to seek medical treatment as a result of her injuries.

The trial court subsequently entered a scheduling order requiring that all pretrial motions be scheduled and filed by April 25, 1991. The court scheduled the trial date for September 10.

Approximately four months before trial, Young's counsel deposed Lentz. During the deposition, Lentz stated that Young would call her into his office while she was working and make sexually explicit suggestions to her. Specifically, Lentz testified that Young told her "[h]e'd like to take me up to his house because [his wife] was gone and take me to bed and show me a good time. One time I was in the office and he said, 'I have something for you,' and he grabbed his pants and he had an erection in his pants." Lentz further testified that Young would "grab" and "touch" her at work. Lentz stated that Young would follow her outside of work and that he telephoned her on several occasions at home to make sexually explicit remarks to her and her thirteen-year-old daughter.

On September 4, the pretrial conference was held, and Lentz produced her itemization of damages. The itemization of damages revealed that Lentz was seeking damages arising out of her employment with Young. Contending that he had been unaware that Lentz would seek such damages, Young's counsel filed motions to enlarge the time to file a motion for summary judgment and for summary judgment seeking dismissal because the WCA barred suit against an employer. Lentz, however, argued that the motions raised an affirmative defense or a matter of avoidance that was not filed within the statutory time limit. Young responded that while the motions were not filed

within the statutorily permitted time period, the motion to enlarge the time for filing was warranted because Lentz's delay in producing her itemization of damages prevented Young from learning that Lentz was seeking damages arising out of her employment until the pretrial conference.

The trial court found that Young's motion did not raise an affirmative defense, but rather an issue of subject matter jurisdiction that could not be waived. The trial court then removed the case from the trial calendar and scheduled further hearings on Young's motions. Both parties filed memoranda in support of their positions, and Lentz submitted an affidavit in which she stated that Young harassed her both at work and at home. She stated that Young called her at home and made sexually explicit and harassing statements to her. She further stated that while at work, Young pinched her buttocks and placed his hands on her chest and "private areas."

At the conclusion of the second hearing, the trial court found that Lentz's injuries stemmed from work-related incidents and that the WCA was her exclusive remedy. Additionally, the court found that all of the assaults and batteries of which Lentz complained took place at work, and that these claims were therefore covered under the WCA. Accordingly, the trial court granted Young's motions and dismissed Lentz's complaint.

## DISCRETION TO EXPAND TIME AND PERMIT MOTION FOR SUMMARY JUDGMENT

Lentz first contends that the trial court erred by permitting Young to raise the exclusivity defense in his summary judgment motion because it was not timely filed. Under § 802.08(1), STATS., a party may only move

for summary judgment within eight months after the filing of the summons and complaint or within the time set by the scheduling order under § 802.10, STATS. In this case, Lentz notes that Young filed his summary judgment motion approximately fifteen months after the summons and complaint were filed and approximately five months after the time set in the scheduling order. Lentz argues that the trial court has the discretion under § 801.15(2)(a), STATS., to expand the time for filing summary judgment motions for cause shown and upon just terms, only where the failure to act was the result of excusable neglect. Here, however, Lentz contends that as of the date of the scheduling conference, Young was aware that she was claiming work-related damages and, therefore, his failure to timely file the summary judgment motion was not the result of excusable neglect. Accordingly, Lentz claims the trial court erroneously exercised its discretion by permitting Young to file the motion.

The eight-month deadline for filing motions under § 802.08(1), STATS., is essential to the consistent and orderly administration of justice. However, the eight-month deadline is not an inflexible rule that the trial courts must blindly apply. *See First Nat'l Bank v. Hansen*, 84 Wis. 2d 422, 427-28, 267 N.W.2d 367, 370 (1978). The filing of motions is a matter that directly impacts the trial court's administration of its calendar. Trial courts have the inherent power to control their dockets to achieve economy of time and effort. *See Neylan v. Vorwald*, 124 Wis. 2d 85, 94, 368 N.W.2d 648, 653 (1985); *Rupert v. Home Mut. Ins. Co.*, 138 Wis. 2d 1, 7, 405 N.W.2d 661, 663 (Ct. App. 1987). This power is essential to the trial courts' ability to function because it provides the courts with the authority to control their

judicial business. *Neylan,* 124 Wis. 2d at 94, 368 N.W.2d at 653. Consistent with this power, a trial court may, in the sound exercise of its discretion, permit a party to file a motion beyond the statutory time limit contained in 802.08(1). We will not disturb the trial court's discretionary determinations in the conduct of a trial unless the parties have been prejudiced. *Alexander v. Riegert,* 141 Wis. 2d 294, 298, 414 N.W.2d 636, 638 (1987).

In this case, the record is devoid of any indication that the trial court's decision to permit Young to file his summary judgment motion was prejudicial to Lentz. A contested hearing was held on the matter, and Lentz was given adequate time to prepare for the hearing and a fair opportunity to be heard on the issue.

Further, we note that the purpose of requiring parties to file motions for summary judgment within eight months of the filing of the summons and complaint is to prevent parties from using summary judgment as a delay tactic. *Hansen,* 84 Wis. 2d at 427-28, 267 N.W.2d at 370. As the *Hansen* court noted: "[W]here a belated motion for summary judgment is predicated on a legal issue totally dispositive of the case, the motion does not cause delay but rather expedites the disposition of the litigation, and the trial court does not abuse its discretion in permitting it." *Id.* at 427-28, 267 N.W.2d at 370. Here, the WCA exclusivity provision was dispositive of the case. Accordingly, to expedite the litigation and avoid a potential waste of judicial time and resources, the trial court reasonably exercised its discretion by permitting Young to file the summary judgment motion after the time established by § 802.08(1), STATS., had expired.

466

## WAIVER OF AFFIRMATIVE DEFENSE

Lentz contends that exclusivity of remedy under the WCA is an affirmative defense or avoidance that must be raised in the defendant's pleadings. Because Young failed to raise this defense in his pleadings, she argues that the trial court erred by failing to conclude that the defense was waived. *See* § 802.02(3), STATS.; *Oetzman v. Ahrens*, 145 Wis. 2d 560, 571, 427 N.W.2d 421, 426 (Ct. App. 1988) (defendant must affirmatively set forth in his or her pleadings any matter constituting an avoidance and failure to do so shall result in a waiver). Whether Young waived his right to assert the exclusivity provision of the WCA is a question of law that we review without deference to the trial court. *See Rural Mut. Ins. Co. v. Peterson*, 134 Wis. 2d 165, 180, 395 N.W.2d 776, 782 (1986).

Lentz's contention is that under § 802.02(3), STATS., a defendant waives his or her affirmative defenses unless they are specifically pled. However, as our supreme court noted in *Robinson v. Mount Sanai Medical Ctr.*, 137 Wis. 2d 1, 16-17, 402 N.W.2d 711, 717 (1987), a defendant may raise an affirmative defense by motion. Here, the record shows, and Lentz concedes, that Young raised the exclusivity issue by motion before trial. As *Robinson* demonstrates, this was an acceptable means of raising the defense. Accordingly, we conclude that Young did not waive the exclusivity defense by failing to include it as an affirmative defense in his answer. It is sufficient to raise such a defense by motion, which was concededly done in this case.

Lentz next contends that the trial court erred by granting Young's motion for summary judgment because applying the exclusivity provision of the WCA to sexual harassment claims is contrary to the purpose and intent of the WCA. We review a summary judgment de novo, applying the same methodology as the trial court. *See* § 802.08(2), STATS. Because that methodology is familiar, we need not repeat it here. *See Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315, 401 N.W.2d 816, 820 (1987). Summary judgment is appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Id.* Additionally, we note that the issue whether a claim is subject to the exclusive remedy provision of the WCA is a question of law that we review de novo. *Schachtner v. DILHR*, 144 Wis. 2d 1, 4, 422 N.W.2d 906, 907-08 (Ct. App. 1988).

A claim is subject to the WCA if: (1) the employee sustains an injury, (2) at the time of the injury, both the employer and employee are subject to the WCA, (3) at the time of injury, the employee is performing services growing out of and incidental to his or her employment, (4) the injury is not intentionally self-inflicted, and (5) the accident or disease causing injury arises out of the employment. Section 102.03(1)(a)-(e), STATS. Section 102.01(2)(c), STATS., defines an "injury" as "mental or physical harm to an employe caused by accident or disease . . . ." Lentz contends that because her injuries resulted from Young's intentional conduct, her injuries were not an "accident" arising out of her employment. Therefore, she contends that the WCA's exclusivity provision is not applicable to her case.

■ The WCA does not define the term "accident." Accordingly, we may look to a recognized dictionary to determine its common and approved meaning. *State v. White*, 180 Wis. 2d 203, 214, 509 N.W.2d 434, 437 (Ct. App. 1993). WEBSTER'S THIRD NEW INT'L DICTIONARY 11 (Unabr. 1976) defines an "accident" as "an unforeseen unplanned event or condition; lack of intention or necessity." Thus, according to the common meaning of "accident," the injury must result from an unintentional or unplanned act.

Despite this definition, however, Young notes that in *Jenson v. Employers Mut. Cas. Co.*, 161 Wis. 2d 253, 263, 468 N.W.2d 1, 6 (1991), our supreme court concluded that the term "accident," as it is used in the WCA, includes injuries that a party sustains both from intentional and unintentional conduct. In *Jenson*, an employee sustained injuries as a result of the intentional conduct of a co-employee. *Id.* at 260, 468 N.W.2d at 3-4. The employee subsequently filed a civil action, arguing that an "accident" under the WCA does not include injuries incurred from intentional conduct. *Id.* at 261, 468 N.W.2d at 4. Our supreme court disagreed. Citing Wisconsin precedent, the court noted that whether an injury is an accident is to be determined from the perspective of the injured employee. *Id.* at 264, 468 N.W.2d at 5. If the injury is unexpected or unforeseen from that perspective, the injury is an accident, regardless of whether the conduct giving rise to the accident was intentional or unintentional. *Id.* at 264-65, 468 N.W.2d at 5-6. Relying on *Jenson*, Young contends that although Lentz alleges that he injured her through intentional conduct, the injury she sustained was an "accident" within the ambit of the WCA.

Unlike *Jenson*, the issue in this case is not whether an employee may bring a civil action against a co-employee for injuries caused by the co-employee's intentional conduct. Rather, the issue is whether an injury suffered by an employee as a result of his or her *employer's* intentional conduct is an "accident" within the purview of the WCA. This is an issue of first impression in Wisconsin. Applying the commonly accepted definition of "accident," it is apparent that an injury resulting from an employer's intentional conduct would not be considered accidental. However, given the *Jenson* court's definition of accident, we conclude that the term "accident" in the WCA is ambiguous. Accordingly, we shall look to the law of other states and the policy behind the WCA for guidance on the resolution of this issue.

In 2A ARTHUR LARSON, WORKMEN'S COMPENSATION LAW 13-1 (1994), Larson states that "[a]n intentional assault by the employer upon the employee, when the employer acts in person as distinguished from constructively through an agent, will ground a common-law action for damages." (Footnote omitted.) The theory upon which other states rely to reach this conclusion varies. However, the conclusion most states reach is that an employer's intentional conduct is not an "accident" within the meaning of the WCA. *Id.* at 13-6. Larson analyzes this theory as follows:

> It is well established that deliberate assault upon an innocent employee by some third person or co-employee is an "accidental injury." It will be recalled from the discussion of assaults that the early difficulty presented by the argument that such an injury was the result of intention as distinguished from accident was overcome by the simple

expedient of viewing the affair from the point of view of the victim rather than of the assailant, since from the victim's point of view the assault was an unexpected and untoward mishap.

However, if the incident gets into court not as a compensation claim but as a damage suit by the employee against an employer-assailant, it is the employer who must affirmatively plead the exclusiveness of the act as a defense. To do this he must allege that the injury was an accident—and how can he do this, when he himself has deliberately produced it? Thus, from the point of view of the person who, as a matter of pleading, must allege the accidental character of the injury, the occurrence was not accidental but intentional.

*Id.* at 13-11-12 (footnotes omitted).

Larson's analysis is equally applicable to this case. Here, Young injured Lentz through his deliberate conduct. Lentz alleges that Young verbally abused and harassed her, "grabbed and touched" her, followed her as she went about her daily affairs and telephoned her at home to make sexually explicit suggestions and remarks.

Despite these allegations and despite the deliberate nature of his conduct, Young suggests that Lentz's injuries were an accident under the WCA. Neither the law nor the public policy underlying the WCA support such a result. As a New York court stated: "It would be anomalous to permit a defendant . . . to say, 'I can assault you with impunity and the only remedy you have is to take Workmen's Compensation which I have provided for you.' " *Garcia v. Gusmack Rest. Corp.*, 150 N.Y.S.2d 232, 233 (1954). Like the *Garcia* court, we will not permit employers to use the WCA to shield them-

selves from the consequences of their intentional acts by labeling these acts as accidents.

Further, we note that allowing employers to use the WCA to shield themselves from liability for intentional acts would exceed the purpose of the WCA. Our supreme court noted in *Brenne v. DILHR*, 38 Wis. 2d 84, 91-92, 156 N.W.2d 497, 500 (1968), that the purpose of the WCA is "to provide financial and medical benefits to [employees who are injured on the job] and to allocate the financial burden to the most appropriate source, the employer, and, ultimately the consumer of the product." When an employer intentionally injures an employee, it is not appropriate to allocate the financial burden associated with that injury to the public. Rather, the burden of compensating the employee for the consequences of the intentional act should lie exclusively with the employer. This is particularly true with regard to sexual harassment cases. In such cases, the physical injuries and medical costs arising from the conduct are frequently nominal. Therefore, to adequately compensate the employee for his or her injuries, it is necessary that the employee be able to pursue damages, including punitives, through a civil action. Without such recourse, there is no effective means of protecting employees from their employer's intentional conduct. Therefore, we conclude that where an employer injures an employee through his or her intentional conduct, the injury is not an "accident" under the WCA, at least to the extent that such intentional conduct involves sexual harassment.

Finally, we note that even were we to accept Young's argument that this case must be analyzed in light of *Jenson*, we would nevertheless conclude that Lentz's injuries were not an accident. Lentz alleges

that she sustained her injuries as a result of Young's prolonged and unrelenting sexually improper conduct. Lentz alleged that Young repeatedly touched her, verbally abused her and followed her over the course of a one-year period. In fact, Young's conduct was so extreme and pervasive that Lentz, with the aid of her fellow employees, took steps to avoid Young at work. Thus, given the protracted and persistent nature of Young's conduct viewed from Lentz's perspective, Young's conduct was not unexpected or unforeseen. Accordingly, we conclude that even under *Jenson*, Young's intentional sexual harassment of Lentz was not an "accident" within the meaning of the WCA.[1]

In sum, we conclude that Young did not waive the exclusivity defense by failing to plead it as part of his answer and that the trial court properly permitted Young to file his motion for summary judgment, despite the fact that the eight-month statutory limitation had elapsed. Further, based on our review of the law of other states and the purpose underlying the WCA, we conclude that an employer's intentional sexual harassment of an employee is not an "accident" under the WCA. Therefore, we conclude that the trial court erred by granting Young's motion for summary judgment and remand the case for further proceedings consistent with this opinion.[2]

*By the Court.*—Judgment reversed and cause remanded.

---

[1] We do not address or decide the issue whether an employer may be considered a coemployee for purposes of the assault exception under § 102.03(2), STATS.

[2] Because we conclude that the trial court erroneously found that Lentz's injuries were the result of an accident compensable exclusively under the WCA, we need not address her remaining arguments.

CANE, P.J. (*concurring*). I concur with the majority's analysis that under the principles enunciated in *Jenson v. Employers Mut. Cas. Co.*, 161 Wis. 2d 253, 468 N.W.2d 1 (1991), Lentz's injuries were not the result of an accident. Given the protracted and persistent nature of Young's conduct viewed from Lentz's perspective, I agree that Young's conduct was not unexpected or unforeseen. Consequently, under *Jenson's* definition of "accident," Young's continuous intentional sexual harassment of Lentz was not an accident within the meaning of the WCA.

Although I agree with the principle that employers should not be allowed to shield themselves under the WCA from liability for intentional acts, I do not concur with the majority's reasoning where it concludes in effect that the term "accident" in an employer-employee situation is defined differently from the supreme court's definition of accident in *Jenson*. In *Jenson,* our supreme court specifically defined the term accident as used in the WCA. The court concluded the term accident must be determined from the perspective of the injured employee, not from the perspective of the person causing the injury. *Id.* at 264, 468 N.W.2d at 5. However, the majority in our case now redefines the term accident and views this determination from the perspective of the person causing the injury, namely the employer. This is exactly the opposite of what our supreme court did in *Jenson*. It is not sufficient to say that *Jenson* involved a co-employee situation and therefore the case is distinguishable. The term accident cannot have two different meanings within the same sentence of the same statute. Therefore, I would affirm the trial court only on the basis that viewing Young's alleged protracted, repeated and persistent misconduct from Lentz's perspective, it was not an

accident. The remainder of the majority's analysis is nothing more than dicta and, unfortunately, incorrect dicta.