COURT OF APPEALS
DECISION
DATED AND FILED

December 17, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2020AP1257**

**STATE OF WISCONSIN**

Cir. Ct. No. 2019TP2

**IN COURT OF APPEALS
DISTRICT III**

IN RE THE TERMINATION OF PARENTAL RIGHTS TO L. B.,
A PERSON UNDER THE AGE OF 18:

BARRON COUNTY DEPARTMENT OF HEALTH AND HUMAN SERVICES,

PETITIONER-RESPONDENT,

V.

M. S.,

RESPONDENT-APPELLANT.

APPEAL from an order of the circuit court for Barron County: J. MICHAEL BITNEY, Judge. *Affirmed*.

¶1     SEIDL, J.[1] Mark appeals an order involuntarily terminating his parental rights to his daughter, Laura.[2]     At the grounds phase of Mark's termination of parental rights (TPR) proceedings, the Barron County Department of Health and Human Services (the Department) moved for partial summary judgment on the ground of abandonment.   In addition to opposing the motion on its merits, Mark moved to dismiss the Department's partial summary judgment motion on the basis that it was untimely under WIS. STAT. § 802.08(1), which provides the summary judgment procedure in civil cases.  Following a hearing, the circuit court rejected Mark's motion and granted the Department's motion.

¶2     Mark argues on appeal that the circuit court lacked authority to consider the Department's motion because it was filed well after the eight-month time period prescribed by WIS. STAT. § 802.08(1).  In the alternative, Mark argues that genuine issues of material fact precluded the court from granting the Department partial summary judgment.  We reject Mark's arguments and affirm.

## BACKGROUND

¶3     On July 28, 2017, when Laura was six years old, she was removed from her mother's home by the Department and eventually placed in a foster home.  Laura was adjudicated a child in need of protection or services (CHIPS) on November 21, 2017.

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2) (2017-18).  All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

[2] Following M.S.'s lead, and pursuant to the policy underlying WIS. STAT. RULE 809.86, we refer to him using the pseudonym "Mark."  We also use a pseudonym when referring to his daughter.

¶4      On January 24, 2019, the Department filed a TPR petition alleging, as relevant to the issues on appeal, that Mark had abandoned Laura.[3]  *See* WIS. STAT. § 48.415(1)(a)2.  The matter proceeded to a jury trial at the grounds phase, which began on November 4, 2019.  For reasons unrelated to the issues on appeal, the circuit court declared a mistrial.

¶5      During a telephone conference with the parties on November 19, 2019, the circuit court ordered that any pretrial motions or motions in limine were to be filed by December 27, 2019.  That deadline for pretrial motions was included in a hearing notice sent to the parties after the telephone conference.

¶6      On December 23, 2019, the Department moved for partial summary judgment on the abandonment ground.  Mark opposed the motion, asserting that there were genuine issues of material fact in dispute.  Additionally, he later moved to dismiss the Department's motion, arguing it was untimely under WIS. STAT. § 802.08(1).  Section 802.08(1) provides that a party may file a summary judgment motion "within 8 months of the filing of a summons and complaint or within the time set in a scheduling order under s. 802.10."  Because approximately eleven months had elapsed from the time the Department petitioned for a TPR, Mark asserted § 802.08(1) precluded the circuit court from considering the Department's partial summary judgment motion.

¶7      On April 1, 2020, the circuit court held a hearing on both parties' motions.  It first addressed Mark's motion to dismiss.  The court agreed with the Department that the court's "earlier directives," as stated on November 19, 2019,

_____

[3] The Department also petitioned to terminate the parental rights of Laura's mother.  Her parental rights are not at issue in this appeal.

would have included summary judgment motions and constituted a formal pretrial scheduling order under WIS. STAT. § 802.10. Because the Department made its motion prior to the deadline that the court established on November 19, the court concluded the Department's motion was timely.

¶8 Additionally, the circuit court determined that even if its earlier directives could not be considered a formal pretrial scheduling order, the court had discretion to enlarge the WIS. STAT. § 802.08(1) eight-month time period within which a party can move for summary judgment. The court agreed with Mark that a party can move for summary judgment outside of the eight-month time period if the court finds that the moving party's failure to act was the result of excusable neglect. *See* WIS. STAT. § 801.15(2)(a). The court then concluded there were reasonable grounds for the Department's noncompliance with § 802.08(1)'s eight-month time period:

> In this case, … in review of its entire file and the pleadings that are before the Court, there's nothing that's been done to prejudice [Mark's] rights in terms of contesting the involuntary TPR petition and the grounds … simply on the basis of the timing of the motion filed by the Department for partial summary judgment.

¶9 The circuit court next addressed the merits of the Department's partial summary judgment motion, concluding the undisputed material facts demonstrated that Mark had abandoned Laura. The court determined that Mark's affidavit opposing the motion contained only "bold, vague, nonspecific, unsupported allegation[s]" regarding his failure to communicate with Laura and that Mark's allegations were insufficient to defeat the Department's motion. Accordingly, the court granted the Department partial summary judgment as to grounds for terminating Mark's parental rights, and it determined him to be an unfit parent.

4

¶10    At the dispositional hearing, the circuit court determined that terminating Mark's parental rights was in Laura's best interests. Mark now appeals. Additional facts are discussed below as necessary.

## DISCUSSION

¶11    Mark's appellate arguments concern only the circuit court's grant of partial summary judgment at the grounds phase of the TPR proceedings. He argues the court erred in two ways. First, he asserts it erred by denying his motion to dismiss the Department's partial summary judgment motion as untimely. Second, Mark argues the court erred by granting the Department partial summary judgment. He contends his opposing affidavit created genuine issues of material fact as to whether he failed to communicate with Laura or, in the alternative, as to whether he had good cause for abandoning her. We address, and reject, each argument in turn.

### I. Mark's Motion to Dismiss

¶12    Mark argues the Department's partial summary judgment motion was untimely under WIS. STAT. § 802.08(1) and, therefore, the circuit court erred by not granting his motion to dismiss the Department's belated motion. The Department responds that the court has discretionary authority outside of § 802.08(1) that permitted the court to entertain the Department's partial summary judgment motion, even assuming it was untimely. Accordingly, this issue involves questions of statutory interpretation and, potentially, of a circuit court's discretionary decision. The interpretation and application of a statute present questions of law that we review de novo while benefiting from the circuit court's analysis. *Brown Cnty. Hum. Servs. v. B.P.*, 2019 WI App 18, ¶10, 386 Wis. 2d 557, 927 N.W.2d 560. We will not upset a circuit court's discretionary decision,

however, unless such discretion was erroneously exercised. ***Hess v. Fernandez***, 2005 WI 19, ¶12, 278 Wis. 2d 283, 692 N.W.2d 655. A circuit court properly exercises its discretion when it examines the relevant facts, applies a proper legal standard, and uses a demonstrated rational process to reach a reasonable conclusion. ***Id.***

¶13 The rules of civil procedure govern TPR proceedings under WIS. STAT. ch. 48 unless that chapter prescribes a different procedure. *See* WIS. STAT. § 801.01(2); ***Steven V. v. Kelley H.***, 2004 WI 47, ¶32, 271 Wis. 2d 1, 678 N.W.2d 856. Both parties agree that the TPR statutes do not prescribe a procedure for the filing of summary judgment motions different than provided in WIS. STAT. § 802.08. *See **Steven V.***, 271 Wis. 2d 1, ¶33.[4]

---

[4] We question the validity of the parties' apparent agreement that the TPR statutes do not prescribe a procedure different from WIS. STAT. § 802.08 for TPR cases. For that proposition, they rely on ***Steven V. v. Kelley H.***, 2004 WI 47, 271 Wis. 2d 1, 678 N.W.2d 856. One of the main holdings in ***Steven V.*** is that the summary judgment procedure is permitted at the grounds phase of TPR proceedings. ***Id.***, ¶39. In so holding, our supreme court observed: "There is nothing in the TPR statutes that explicitly or implicitly prohibits the use of summary judgment procedure under … § 802.08 in the unfitness phase of a TPR case. Nor do the TPR statutes prescribe a procedure different from … § 802.08 for TPR cases …." ***Steven V.***, 271 Wis. 2d 1, ¶33. Both parties cite to that part of ***Steven V.*** in stating that there are no relevant statutes in WIS. STAT. ch. 48 that could provide the circuit court with authority to hear a partial summary judgment motion outside of the eight-month time period prescribed by § 802.08(1).

This court's independent research, however, revealed two statutory provisions in WIS. STAT. ch. 48 that might relate to the time period in which a summary judgment motion can be brought, and, thus, could be construed as a procedure different from that set forth in WIS. STAT. § 802.08. WISCONSIN STAT. § 48.297(1) provides: "Any motion which is capable of determination without trial of the general issue may be made before trial." Additionally, § 48.297(2) states:

(continued)

6

¶14  WISCONSIN STAT. § 802.08 outlines the summary judgment procedure in civil actions.  Subsection (1) provides that "[a] party may, within 8 months of the filing of a summons and complaint or within the time set in a scheduling order under s. 802.10, move for summary judgment on any claim …."  Section 802.10(3), in turn, grants a circuit court authority to issue scheduling orders on its own motion or on the motion of a party.  However, § 802.10 expressly does not apply to actions under WIS. STAT. ch. 48—i.e., the Children's Code that governs TPR proceedings, among other proceedings.  *See* § 802.10(1) ("This section applies to all actions and special proceedings except … actions under ch[.] 48.").

¶15  To begin, we agree with Mark that the circuit court lacked direct statutory authority under WIS. STAT. § 802.08 to enlarge the eight-month time

> Defenses and objections based on defects in the institution of proceedings, lack of probable cause on the face of the petition, insufficiency of the petition or invalidity in whole or in part of the statute on which the petition is founded shall be raised not later than 10 days after the plea hearing or be deemed waived. *Other motions capable of determination without trial may be brought any time before trial.*

(Emphasis added.)  A summary judgment motion is, by definition, capable of resolution without a trial.  Further, the notion that these provisions encompass summary judgment motions is bolstered by the fact that they are found within the same subchapter as WIS. STAT. § 48.31(1), which statute also refers to the summary judgment procedure for a TPR.

Given that *Steven V.*'s analysis was not focused on the timeliness of a summary judgment motion, but rather on whether summary judgment was permissible at all in TPR cases, it is not readily apparent that *Steven V.* truly held—as the parties represent—that there are no statutes within the Children's Code that relate to the time period in which a summary judgment motion can be brought.  We therefore question whether the parties read *Steven V.* too broadly.  Nevertheless, because the parties agree that WIS. STAT. ch. 48 should not be relied upon here and because neither party cites to WIS. STAT. § 48.297(1) and (2) in their arguments, we do not rely upon § 48.297(1) and (2) in concluding that the circuit court was permitted to allow the Department to file its partial summary judgment motion outside of the eight-month time period prescribed by WIS. STAT. § 802.08(1).

period pursuant to a scheduling order issued under WIS. STAT. § 802.10 because the latter statute does not apply in WIS. STAT. ch. 48 actions. We therefore conclude that the court lacked direct authority under § 802.08(1) to permit the Department's filing of its December 23, 2019 partial summary judgment motion as it was filed more than eight months after the TPR petition was filed.

¶16 Nonetheless, circuit courts have inherent power, within the limits of their discretion, to control their dockets. *See **Hefty v. Strickhouser***, 2008 WI 96, ¶31, 312 Wis. 2d 530, 752 N.W.2d 820. This power of docket control is also granted by statute. ***Id.*** (citing WIS. STAT. § 802.10).[5] Consistent with its inherent and statutory powers to manage its docket, a court has broad discretion in deciding how to respond to untimely motions. *See **Lentz v. Young***, 195 Wis. 2d 457, 465-66, 536 N.W.2d 451 (Ct. App. 1995), *overruled on other grounds by **Maple Grove Country Club Inc. v. Maple Grove Estates Sanitary Dist.***, 2019 WI 43, ¶¶46-48, 386 Wis. 2d 425, 926 N.W.2d 184. Accordingly, "the eight-month deadline is not an inflexible rule that the trial courts must blindly apply." ***Id.*** at 465. Importantly, WIS. STAT. ch. 48 does not appear to limit this inherent authority. *See supra*, n.5.

¶17 Moreover, even if a deadline to file a summary judgment motion has already had elapsed, a circuit court has the discretion to enlarge the time under WIS. STAT. § 801.15(2)(a). *See **Thorp v. Town of Lebanon***, 225 Wis. 2d 672, 683, 593 N.W.2d 878 (Ct. App. 1999), *aff'd*, 2000 WI 60, 235 Wis. 2d 610, 612 N.W.2d 59. The circuit court may grant relief under § 801.15(2)(a) if it finds reasonable grounds for noncompliance with the statutory time period—i.e.,

---

[5] Although WIS. STAT. § 802.10 does not apply to TPR proceedings, there are provisions of the Children's Code that, as noted previously, appear to give the circuit court some statutory power to control its docket. *See* WIS. STAT. §§ 48.297(1), (2); 48.315(2), (3).

"excusable neglect"—and if the interests of justice would be served by the enlargement of time—e.g., that the party seeking an enlargement of time has acted in good faith and that the opposing party is not prejudiced by the time delay. *Hedtcke v. Sentry Ins. Co.*, 109 Wis. 2d 461, 468, 326 N.W.2d 727 (1982). "Excusable neglect" means "neglect which might have been the act of a reasonably prudent person under the same circumstances." *Id.* (citation omitted). The party seeking relief need not file a motion for the enlargement of time, and the court need not use the term "excusable neglect." *Thorp*, 225 Wis. 2d at 683. "What is critical is that the court explain its analysis, and that its analysis is reasonable." *Id.* at 683-84.

¶18    Our supreme court in *Hedtcke* further held that "[w]hen the circuit court sets forth no reason or inadequate reasons for its decision, this court may engage in its own examination of the record and determine whether the circuit court exercised its discretion and whether the facts provide support for the circuit court's decision." *Hedtcke*, 109 Wis. 2d at 471. The *Hedtcke* court went on to hold that this ab initio review includes assessing whether the circuit court's implicit finding of excusable neglect under WIS. STAT. § 801.15(2)(a) was proper. *Hedtcke*, 109 Wis. 2d at 472. In conducting such a review, the appellate court must assume that the circuit court made a finding of excusable neglect as required by the statute and our prior cases. *Id.*

¶19    We find *Hedtcke* instructive because the circuit court here did not explain the basis for its implicit finding of excusable neglect, other than by stating that it believed the court had discretionary authority to enlarge the eight-month time period prescribed by WIS. STAT. § 802.08(1). We therefore assume, as we must, that in granting the Department's filing of its motion beyond the eight-month deadline, the circuit court made an implicit finding of excusable

neglect. *See **Hedtcke***, 109 Wis. 2d at 471-72. Accordingly, we now review the record to determine whether that implicit finding is supported. *See **id.*** at 471.

¶20 We determine that the record here does support the circuit court's implicit finding that the Department's noncompliance with WIS. STAT. § 802.08(1) was the result of excusable neglect.[6] The Department reasonably relied on the court's directive at the November 19, 2019 telephone conference—which was also memorialized in a subsequent hearing notice sent to the parties—that it could bring any pretrial motion by December 27, 2019. That was an act of a reasonably prudent person under the circumstances. *See **Hedtcke***, 109 Wis. 2d at 468. The court essentially found as much when it stated that its November 19 directive of when "to file any pretrial motions or motions in limine included motions such as the motion pending before the Court for summary judgment." Moreover, there is nothing in the record to suggest the Department acted in bad faith by bringing the motion when it did, nor did the court make any finding in that regard.

¶21 Additionally, the circuit court found Mark was not unreasonably prejudiced by the timing of the Department's motion, and the record supports this finding. Mark was able to respond to the motion, and he does not assert the timing of the Department's motion hindered his ability to respond as desired. For the foregoing reasons, we conclude the court's decision in allowing the Department to file its partial summary judgment motion outside of the eight-month time period

---

[6] The deadline for the Department to bring its partial summary judgment motion under WIS. STAT. § 802.08(1) was September 24, 2019. We acknowledge that we rely on circumstances occurring after that deadline in concluding the Department's actions were the result of excusable neglect. However, neither WIS. STAT. § 801.15(2)(a) nor case law appears to require that the circumstances relied upon for a showing of excusable neglect to enlarge a deadline need to occur before the expired deadline.

prescribed by WIS. STAT. § 802.08(1) was a proper exercise of the court's discretion.

¶22    We are not persuaded by Mark's arguments to the contrary.  He first argues that the circuit court lacked any authority under WIS. STAT. § 801.15(2)(a) to permit the Department's partial summary judgment motion.  In Mark's view, the court had no authority under § 801.15(2)(a) to enlarge the eight-month time period because the Department made neither a showing of "cause" nor excusable neglect, and because the court did not formally enter an "order of enlargement." In the same vein, he contends *Lentz* is materially distinguishable because the party in that case who sought to file a belated summary judgment motion also filed a motion to enlarge the time under § 801.15(2)(a).  *See Lentz*, 195 Wis. 2d at 463.

¶23    We reject Mark's arguments.  Here, the Department did not formally file a motion to enlarge, and the circuit court did not expressly use the term "excusable neglect" in its decision.  However, as noted above, a party seeking relief under WIS. STAT. § 801.15(2)(a) need not file a motion for an enlargement of time, and the circuit court need not use the term "excusable neglect"—what is critical is that the court explain its analysis, and that its analysis is reasonable.  *See Thorp*, 225 Wis. 2d at 683-84.  And, as explained above, the court made an implicit finding of excusable neglect that we conclude is supported by the record.

¶24    Here, the circuit court correctly observed that it had discretion to permit the Department's partial summary judgment motion, and it found that Mark was not prejudiced by the Department's delay in filing its motion—which determination, as previously explained, we conclude was reasonable.  Although the court could have better explained its reasoning on the record, the record supports the court's implicit finding that it effectively ordered the enlargement of

time for the Department to file its motion, complying with WIS. STAT. § 801.15(2)(a). Consequently, we disagree with Mark that **Lentz** required the Department to file a formal motion to enlarge the time. Pursuant to § 801.15(2)(a), the court properly permitted the Department's partial summary judgment motion outside of the eight-month time period prescribed by WIS. STAT. § 802.08(1).

¶25 Mark also asserts that the circuit court cannot have the inherent authority to accept the Department's motion outside of the eight-month time period prescribed by WIS. STAT. § 802.08(1) because if the court did, then it would have unfettered power, "untethered to any statutes, to entertain untimely motions for summary judgment in TPR cases despite the irrefutable fact that, compared with other civil cases, a parent in a TPR case is entitled to enhanced procedural protections …." Mark's concerns, however, are overstated. As we explained above, and as **Lentz** confirms, the court's discretionary authority here is rooted in its inherent authority to control its docket and granted, in part, by at least one statute, WIS. STAT. § 801.15(2)(a).[7] *See **Lentz***, 195 Wis. 2d at 465-66.

¶26 Further, the circuit court's discretionary decision in this regard is not, as Mark argues, without limitations. Again, the court must still find reasonable grounds for noncompliance with the statutory time period, that the party seeking an enlargement of time has acted in good faith, and that the opposing party is not prejudiced by the delay. *See **Hedtcke***, 109 Wis. 2d at 468. The court must also explain its analysis, and its analysis must be reasonable,

---

[7] As noted previously, WIS. STAT. § 48.297(1) and (2) may also give the circuit court statutory authority in TPR proceedings to entertain the Department's partial summary judgment motion outside of the eight-month time period prescribed by WIS. STAT. § 802.08(1).

because otherwise the court risks reversal on appellate review. *See **Thorp***, 225 Wis. 2d at 683-84. We are therefore unpersuaded by Mark's concern that, under our analysis, a court would have unlimited discretionary authority to entertain partial summary judgment motions in TPR cases outside of the eight-month time period prescribed by WIS. STAT. § 802.08(1).

¶27 Finally, Mark asserts that "[t]he grant of partial summary judgment in a TPR case does not result in the sort of judicial efficiency envisioned in" the cases upon which we rely. In his view, the circumstances here ran afoul of our supreme court's caution in ***Steven V.*** that summary judgment is appropriate in TPR cases only "if carefully administered with due regard for the importance of the rights at stake and the applicable legal standards." ***Steven V.***, 271 Wis. 2d 1, ¶35.

¶28 The proceedings below did not disregard Mark's rights or run afoul of the applicable legal standards. Mark does not argue that the summary judgment procedure was not followed (other than with regard to the motion's timeliness)—he was given notice, an opportunity to respond, and a hearing at which the Department bore "the burden of demonstrating both the absence of any genuine factual disputes and entitlement to judgment as a matter of law under the legal standards applicable to the claim." ***Id.***; *see also* WIS. STAT. § 802.08(2), (3). And as explained below, we conclude upon our independent review—albeit consistent with the circuit court's decision—that the Department satisfied this burden in its summary judgment filings.

¶29 Under these circumstances, judicial efficiency is plainly promoted by partial summary judgment, especially given the long pendency of the action. Most TPR cases are resolved expeditiously. *See* WIS. STAT. § 48.01(1)(gr)

13

(stating one of the legislative purposes of WIS. STAT. ch. 48 is "[t]o allow for the termination of parental rights at the earliest possible time after rehabilitation and reunification efforts are discontinued in accordance with this chapter and termination of parental rights is in the best interest of the child"). Yet, as the circuit court observed, this case had "been pending for some time," due in part to the first grounds trial ending in a mistrial. This case had been pending since January 2019, with the second trial having been scheduled approximately one year and four months after the petition was filed.

¶30 The circuit court reasonably concluded that permitting the Department to file its partial summary judgment motion outside of the eight-month time period would properly expedite the litigation and avoid a potential waste of judicial time and resources because granting the Department's motion, if it had merit, would avoid a multi-day trial and allow for the court to more immediately hold a dispositional hearing. We therefore reject Mark's arguments that granting the Department partial summary judgment did not promote judicial efficiency and that doing so disregarded the importance of his parental rights.

## II. The Merits of the Department's Motion for Partial Summary Judgment

¶31 Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." WIS. STAT. § 802.08(2). We begin by examining the moving party's submissions to determine whether they sufficiently establish a prima facie case for summary judgment. *B.P.*, 386 Wis. 2d 557, ¶33. If they do, we then turn to the opposing party's submissions to

determine whether they show material facts are in dispute, such that the opposing party is entitled to a trial. *Id.*

¶32 The purpose of summary judgment is to avoid trials when there is nothing to try. *Id.*, ¶34. Courts do not resolve issues of fact on summary judgment, but instead only decide whether genuine issues of material fact exist. *Id.* A factual issue is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Id.* Summary judgment also should not be granted if differing reasonable inferences can be drawn from the undisputed facts. *Id.* All favorable facts and all reasonable inferences from those facts must be construed in the nonmoving party's favor. *Id.* For this reason, the Department shoulders the burden in TPR cases to show it is entitled to judgment as a matter of law when, "taking into consideration the heightened burden of proof specified in WIS. STAT. § 48.31(1) and required by due process," there are no genuine factual disputes "regarding the asserted grounds for unfitness under WIS. STAT. § 48.415." *See Steven V.*, 271 Wis. 2d 1, ¶6. We review a grant of summary judgment independently, using the same methodology as the circuit court. *B.P.*, 386 Wis. 2d 557, ¶34.

¶33 The Department alleged that Mark had abandoned Laura. As relevant here, the Department is entitled to partial summary judgment on the ground of abandonment if the undisputed material facts show that Laura "has been placed, or continued in a placement, outside [of her parents'] home by a court order containing the notice required by s. 48.356 (2) or 938.356 (2) and [Mark] has failed to visit or communicate with [Laura] for a period of 3 months or longer." *See* WIS. STAT. § 48.415(1)(a)2.

¶34    Mark argues there are disputed material facts to whether he failed to communicate with Laura for a period of three months or longer. In support of its partial summary judgment motion, the Department submitted the affidavit of Jessica Wager, a social worker from the Department. As relevant to the issue of Mark's failure to communicate with Laura, Wager averred to the following.

¶35    Wager had been the ongoing social worker assigned to Laura's case since approximately September 2017, and Wager had regular contact with Laura and her foster parents. Wager's job also included trying to provide visits between Laura and her biological parents, and Wager "made repeated attempts at contact with [Mark] to arrange for visits or otherwise arrange services, often to no avail." Mark knew how to reach Wager and the Department for the purpose of contacting or visiting Laura, but he never did so. From approximately December 19, 2017, until May 8, 2018, Mark "did not have contact with [Laura] or visit with her." Additionally, between November 2017 and July 2019,[8] Mark failed to visit or communicate with Laura, despite:

> a. Knowing she was in out-of-home care;
>
> b. Knowing the name and address of the foster parents providing the out-of-home care;
>
> c. Knowing that she was under the jurisdiction of the Court and under the supervision of the Department in the CHIPS case; [and]
>
> d. Knowing how to contact [Wager] and/or the foster parents by coming to team meetings, coming to the office, and/or calling on the phone.

---

[8] Wager averred that Mark "finally decided to resume contact" in July 2019, which was "nearly six (6) months or more after the TPR Petition was filed."

¶36    When opposing the motion for partial summary judgment, Mark made the following averments regarding his communication with Laura. From November 2017 until July 2019, Mark was "incarcerated at different times for [a] total of about [one] year." While he was incarcerated, he "sent two letters to [Laura]." He sent one letter directly to her, and he sent the other letter to Laura's mother to give to Laura. Mark, however, did not know if Laura ever received the two letters.

¶37    Additionally, Mark, "[w]hile incarcerated and out … frequently talked on the phone to [Laura's mother] and she kept [him] informed about [Laura]." Mark talked with Laura over her mother's phone "many times during the November 2017 to July 2019 period" when Laura's mother was visiting her. Although Mark tried to reach Laura directly by phone on "several" occasions, he was unsuccessful in doing so. Finally, from November 2017 through January 2019, "there was no period as long as three months when [Mark] did not have conversations about [Laura] with her mother, or attempt to reach her by letter or telephone call."

¶38    We conclude, first, that the Department made a prima facie showing that Mark failed to communicate with Laura for a period of three months or longer and, second, that Mark's averments regarding his communication with Laura lacked the specificity necessary to demonstrate that genuine issues of material fact are in dispute on the abandonment ground. Mark was required to "set forth specific facts showing that there is a genuine issue for trial." *See* WIS. STAT. § 802.08(3). He did not do so.

¶39    Mark's general averment that he talked with Laura over the phone "many times" between November 2017 and July 2019 (a twenty-one-month

period) is insufficient to create a material question of fact as to whether there was no three-month period in which he failed to communicate with Laura. Although Mark described how he communicated with Laura, no reasonable finder of fact would return a verdict in his favor based on Mark's failure to aver more precise dates of communication and a more precise period of time during which he communicated with her. *See B.P.*, 386 Wis. 2d 557, ¶34.

¶40 We reject Mark's argument that our conclusion "is inconsistent with human behavior and … with the deference that must be afforded the party opposing summary judgment." Indeed, our conclusion is supported by the fact that Mark specifically averred that between November 2017 and January 2019, "there was no period as long as three months [in which he] did not have conversations about [Laura] with her mother, or attempt to reach her by letter or telephone call." Unlike that averment or, as another example, Wager's averment describing a five-month period in which Mark had no communication with Laura, Mark's general averment that he communicated with Laura an unknown number of times, at unknown intervals between communications, using unknown methods of communication, and during an approximately twenty-six-month time frame cannot meet the specificity required to defeat summary judgment.

¶41 Mark also argues that genuine issues of material fact exist regarding his good cause defense to abandonment. WISCONSIN STAT. § 48.415(1)(c) provides parents an opportunity to show that they had good cause for both failing to visit and failing to communicate with their child during the three-month period when they had no contact.

¶42 We disagree with Mark that genuine issues of material fact exist regarding his good cause defense to abandonment. His affidavit failed to set forth

specific facts demonstrating why he had good cause for failing to communicate with Laura. *See* WIS. STAT. § 802.08(3). No reasonable finder of fact would conclude Mark had good cause for failing to communicate with Laura based upon his averments regarding his unspecified periods of incarceration and his access to a telephone. *See **B.P.***, 386 Wis. 2d 557, ¶34. Neither averment meets the specificity requirement prescribed by § 802.08(3).

¶43    In particular, Mark does not explain how or why his incarceration "at different times … of about a year" between November 2017 and July 2019, without more, provided good cause for his failure to communicate with Laura. Mark's averments regarding his telephone access are similarly deficient. No reasonable inference can be drawn in favor of Mark's good cause defense regarding his lack of communication because he failed to specify when he did not have a telephone or did not have "ready access" to one during the same twenty-six-month period. Consequently, the finder of fact would have to speculate as to the periods of time when Mark did have access to a phone but did not communicate with Laura. Further, the finder of fact would have to speculate to why it was "difficult for [him] to remain in communication with people involved in this proceeding" without additional, specific facts explaining the difficulties he encountered and whether those difficulties occurred when he had access to a phone. We also note that Mark makes no averment about his communicating with Wager, including his inability to do so.

¶44    For the foregoing reasons, we conclude Mark has not demonstrated that disputed issues of material fact exist as to his good cause defense for failing to communicate with Laura. We therefore affirm the circuit court's grant of partial summary judgment against Mark, as well as its subsequent order terminating his parental rights to Laura.

*By the Court.*—Order affirmed.

This opinion will not be published.  *See* WIS. STAT. RULE 809.23(1)(b)4.