Jan K. JENSON, Plaintiff-Appellant-Petitioner,†

v.

EMPLOYERS MUTUAL CASUALTY COMPANY, a
foreign insurance company, Wausau Underwriters
Insurance Company, a domestic insurance corporation,
Tower Insurance Company, Inc., a domestic insurance
corporation and Guy Little, Sr., Defendants-
Respondents.

Supreme Court

*No. 89-0961. Argued January 3, 1991.—Decided April 17, 1991.*

(Also reported in 468 N.W.2d 1.)

---

†Motion for reconsideration denied.

254

For the plaintiff-appellant-petitioner there were briefs by *Daniel Snyder* and *De Bardeleben & Associates,* Park Falls and oral argument by *Mr. Snyder.*

For the defendant-respondent, Wausau Underwriters, there was a brief by *Stephen R. Bick, Theodore D. Salzer* and *Witkin, Till & Bick, Ltd.,* Superior and oral argument by *Mr. Salzer.*

For the defendant-respondent, Employers Mutual, Tower Insurance and Guy Little, Sr., there was a brief by *Chris A. Gramstrup* and *Gee, Hendricks, Knudson & Gee, S.C.,* Superior and oral argument by *Mr. Gramstrup.*

HEFFERNAN, CHIEF JUSTICE. This is a review of a published court of appeals decision, 154 Wis. 2d 313, 453 N.W.2d 165 (1990), which affirmed the summary judgment of the circuit court for Douglas county, Joseph A. McDonald, Judge, which dismissed the plaintiff's complaint for intentional infliction of emotional distress because plaintiff's remedy was exclusively under the Workers Compensation Act (hereinafter WCA). We affirm the court of appeals.

The plaintiff, Jan K. Jenson, became the clerk-treasurer of the Village of Solon Springs in 1978 by appointment of the village board. Insofar as this record on summary judgment and depositions of Jenson, the plaintiff, and Little, the defendant, indicate, no events of significance to this litigation occurred until April of 1985, when Guy Little, Sr., was elected president and trustee of the village board.

Immediately after the commencement of Little's term in 1985 as president, the plaintiff alleges Little commenced a course of conduct that inflicted emotional distress upon her which led to her alleged disability and the commencement of the lawsuit.

In her deposition, Jenson states that, prior to Little's becoming village president, she had no contact with him except for seeing him on the street or when he came

into her office. She characterized his attitude on the latter occasion as "rude and demanding." She also stated that her friends reported, after Little's election, that Little was going "to run me out of office." She was told that Little's reason for running her out of office was "that my boyfriend had formerly gone with his daughter and that he had never accepted my boyfriend breaking up with his daughter in spite of the fact that it was done some time before I met my boyfriend."

Upon assuming office, Little immediately proposed that Jenson's work hours be cut in half—this despite the fact she had an existing contract signed by the prior village president and approved by the village board. The depositions reveal, without dispute, that Little told the village board that Jenson was doing a bad job and that he attacked her work performance at a public village board meeting. He accused her of being dishonest and a liar. Jenson's deposition also asserts that these accusations were made at the board meeting, before the board meeting, and immediately afterwards, and that Little was talking about her in respect to his relationship with her in his capacity as village president. She acknowledged that she had no relationship with Little except in the job situation, and that the altercation was about her job performance and hours of work. While Jenson clearly stated that Little "slandered" her on other than work occasions or at village board meetings, the accusations were all work related.

Although Jenson received the support of the village board, she asserts the conduct of Little caused her physical and emotional problems, which on one occasion required her to take a six-week leave of absence.

Action was brought in July of 1986 against Little for the intentional infliction of emotional distress. Allegation 8 of the complaint stated:

8. Since the 19th day of April, 1985, the defendant Guy Little Sr. with intent to cause the plaintiff emotional distress, has engaged in gross, extreme, and outrageous conduct in complete denial of the plaintiff's dignity as a person, all without privilege so to do, including, among other acts, the unjustified and unjustifiable issuance of threats of the termination of the plaintiff as such clerk-treasurer, public issuance in an oppressively loud and overbearing voice of false accusations that the plaintiff is a liar, berating the plaintiff in a loud and intimidating voice, in public, and with violent gestures for plaintiff's refusal to follow unlawful and wrongful orders issued by the defendant Guy Little Sr. falsely impugning the integrity of the plaintiff in a loud, overbearing, demeaning, and vituperative manner in the presence and hearing of other employees of the said village and members of the public, the public issuance of false and degrading statements to the effect that the plaintiff had authored and submitted false financial reports with respect to the affairs of the said village, issuance of false public statements to the effect that the plaintiff, in her capacity as such clerk-treasurer, is incompetent and dishonest, unjustified and deliberate refusal to cooperate with the plaintiff in the conduct of the business of the said village thereby subjecting the plaintiff to unwarranted public criticism and opprobrium, and unjustified denial or withholding of compensation and other benefits and things of value to which the plaintiff is entitled by virtue and under the terms of her contract of employment as such clerk-treasurer of said village.

Jenson not only took sick leave, which she claims was made necessary by the conduct of Little, but also asserted periods of malaise and depression. Eventually she resigned in December of 1986, when the village board concluded that the next clerk-treasurer would be elected.

Jenson would not have been eligible because she was not a resident of Solon Springs.

The action was brought not only against Little but against three insurance companies which insured Little and the Village of Solon Springs in the event of covered misconduct.

Originally, defendants moved to dismiss for failure to state a claim upon which relief could be granted. This motion was denied.

In October of 1988, the defendants filed a motion for summary judgment dismissing the complaint on the grounds that the plaintiff's exclusive remedy is under the WCA, the claim having been brought against a co-employee, and that there were no genuine issues of material fact. After several hearings, Judge Joseph A. McDonald concluded that the action was exclusively cognizable under the WCA and that Little and Jenson were co-employees of the Village of Solon Springs. Judge McDonald also held that the exception from the exclusivity provision contained in sec. 102.03(2), Stats., where the injury results from an assault intended to cause "bodily harm" was inapplicable. Summary judgment was entered dismissing the complaint of Jan Jenson.

On appeal to the court of appeals by Jenson, that court affirmed. Contrary to the assertions of the plaintiff, the court of appeals held that intentional injuries are within the purview of the WCA, that emotional injuries are specifically covered, and that the assault exemption from the exclusive remedy afforded by sec. 102.03(2), Stats., was inapplicable under the facts of this case.[1]

[1]The court of appeals neglected to address plaintiff's contention that the altercations between Jenson and Little were not in the course of employment but rather were the outgrowth of a personal vendetta carried on by Little because his daughter's former boyfriend became a friend of Jenson. We address this ques-

We affirm the court of appeals in each of its conclusions.

The basic question is whether the claim of Jan Jenson is cognizable under the provisions of the WCA. If it is, then, under the provisions of sec. 102.03(2), Stats., workers compensation "shall be the exclusive remedy against the employer, any other employe of the same employer . . .."[2]

The plaintiff makes various arguments that the claim is not one where there is the right to recovery under the WCA and, therefore, her common law action against Little may proceed.

It is asserted by Jenson that the action of Guy Little was intentional and only unintentional conduct gives rise to worker compensation liability; that the type of injury—mental distress—allegedly sustained is not of a kind that is compensable under the WCA; that she was not performing services "growing out of and incidental to his or her employment," as required by sec. 102.03(1)(c)1 of the WCA; that the "accident" causing injury did not arise out of the employment, as required by sec. 102.03(1)(e) of the WCA; and that Little's conduct constituted an assault intended to cause bodily harm.[3]

---

tion *infra.* She expands her argument, saying that additional facts must be elicited before there could be a summary judgment against the plaintiff. Facts, it is asserted, would show a non-employment-related personal vendetta against Jenson.

[2]This section goes on to provide:

> This section does not limit the right of an employe to bring an action against any coemploye for assault intended to cause bodily harm . . ..

The assault exception will be discussed later.

[3]We emphasize that the applicable statutory provisions are those found in Wis. Stats. 1985–86.

This matter comes before this court on summary judgment, and we apply the same standard of review as would be applied *ab initio* by the circuit court. As pointed out in *Green Spring Farms v. Kersten,* 136 Wis. 2d 304, 315, 401 N.W.2d 816 (1987), a two-step methodology is appropriate: First, whether a claim has been stated upon which relief can be granted and, second, whether there is a genuine issue as to any material fact that must be determined. In the instant case, there appears to be no doubt that, in the absence of the exclusivity remedy of the WCA, a cause of action is stated against Guy Little. The question, as we view it, is one of law in light of there being no material issues of fact to be determined, bearing in mind that the only question is whether the action must be dismissed because it has been statutorily preempted by the WCA. We obviously do not make the findings of fact that would be necessary to support an award of worker's compensation. We affirm the trial court and the court of appeals on factual matters only because reasonable persons could not differ on the conclusion that material facts are not at issue or in dispute.

It should be emphasized that it is Jenson who asserts a common law claim for the obvious reason that recovery under the WCA is only in a scheduled amount while the common law claim permits whatever recovery a jury may award that is supported by the evidence. It is Little who has asserted the defense that the common law action must be dismissed because of the exclusivity provision of the WCA.

Under the facts of this case Little is not the employer of Jenson—despite the fact he is the village president. The two, as was acknowledged at oral argu-

ment and in briefs by Jenson's counsel, are co-employees, both working for the employer, Village of Solon Springs. Prior to 1978 the exclusivity remedy of the WCA did not apply if the common law remedy were sought against a co-employee. However, in 1978, the Act was amended to make exclusivity applicable in an action against "any other employe of the same employer." See *Lampada v. State Sand & Gravel Co.,* 58 Wis. 2d 315, 206 N.W.2d 138 (1973), in which this court discussed the applicability of the exclusivity provision to a co-employee and held that a co-employee could be sued at that time at common law. The portion of the WCA relied upon in *Lampada* has been superseded by the legislature's subsequent amendments. Sections 2 and 3, ch. 195, Laws of 1977. Thus, Jenson's common law action is barred by the exclusivity provisions if she in all other respects is entitled to recovery under the Act. *See* sec. 102.03(2), Stats. 1985–86.

One of the conditions for recovery under the Act is that the claimant "sustains an injury." Section 102.03(1)(a). Section 102.01(2)(c) states: " 'Injury' means mental or physical harm to an employe caused by accident or disease." The statute applicable further included the provision: " 'Injury' includes mental harm or emotional stress or strain without physical trauma, if it arises from exposure to conditions or circumstances beyond those common to occupational or nonoccupational life." Section 102.01(2)(c).[4]

Jenson claims she should not be confined to her remedies under the WCA because no injuries, even those otherwise compensable, are covered by the Act if they

---

[4]Subsequent legislative changes, Laws of 1987, a. 179, revised the provision to read: "(c) 'Injury' means mental or physical harm to an employe caused by accident or disease."

are intentionally, and not accidently, inflicted. Under the undisputed facts, there is no doubt that Little's conduct was intentional. We conclude, based on prior holdings of this court and of the court of appeals, that injuries that are caused by intentional conduct may lie within the purview of "accident" under the WCA and may constitute compensable injuries under the WCA, for which compensation may not be denied merely because they are intentionally inflicted. The argument of Jenson is that only injuries that are inflicted by accident or disease are covered by the Act—there is no argument that disease is involved—but she argues the injury cannot be a harm caused by accident if it is inflicted with intent. While there is more than a modicum of common sense in that assertion, our case law leads to the contrary conclusion.

In *Jadofsky v. Iowa Kemper Ins. Co.,* 120 Wis. 2d 494, 498, 355 N.W.2d 550 (Ct. App. 1984), it was stated that intentionally inflicted injuries are indeed accidents under the WCA. In that particular instance, however, the intentional tort of bad faith was held to be outside of the employment relationship.

In *School District No. 1, Village of Brown Deer v. ILHR Dept.,* 62 Wis. 2d 370, 375, 215 N.W.2d 373 (1974), relying upon language in *Beck v. Hamann,* 263 Wis. 131, 56 N.W.2d 837 (1953), we stated:

> This court has previously defined "accident" in terms of the workmen's compensation statute as a fortuitous event unexpected or unforeseen by the *injured person,* even though the injury is intentionally inflicted by another. [Emphasis supplied.]

*School District No. 1* emphasized that whether the conduct is an accident must be viewed from the perspective of the injured party. It pointed out that, if the result

of the act is unexpected or unforeseen, from that perspective the injury is by accident. Although the explanation of *School District* is convincing, the crucial fact in that case leading to a denial of compensation was that the injury or emotional stress was no greater than the many stresses that any employee would suffer in the course of employment. *See* pp. 377–78. We cannot agree with the petitioner, however, that the court's conclusion that an intentional injury constitutes an accident is mere dicta for, had it not been integral to the holding of *School District,* the court would never have been obliged to discuss the nature of injury inflicted. We conclude that the careful exposition of the relation of intent to accident constitutes a precedent which this court is obliged to follow.

In *John H. Kaiser Lumber Co. v. Industrial Comm.,* 181 Wis. 513, 515, 195 N.W. 329 (1923), this court stated:

> The injury was caused by accident. An accident is a fortuitous event, unexpected and unforeseen by the injured person. The *Industrial Commission* early held that even though the injury might be intentionally inflicted by another, if the injury is unexpected and unforeseen by the person injured it was an accident within the compensation act . . ..

There are numerous cases where Wisconsin courts, without discussing whether "intentional" or "unintentional" was a criterion, held that WCA coverage applied in cases where the injury was intentionally caused. *Applied Plastics, Inc. v. LIRC,* 121 Wis. 2d 271, 275, 359 N.W.2d 168 (Ct. App. 1984); *Allied Mfg., Inc. v. IHLR Dept.,* 45 Wis. 2d 563, 173 N.W.2d 690 (1970); *Nash-Kelvinator Corp. v. Industrial Comm.,* 266 Wis. 81, 62 N.W.2d 567 (1954). In view of the long consistent holding of Wisconsin courts that uniformly conclude that an

intentional act comes within the purview of the WCA, the assertion of the petitioner is hardly worthy of argument.[5]

Jenson asserts that Little intentionally caused her injuries. As a matter of law we conclude such conduct constitutes an accident as the term is used under the provisions of the WCA.[6]

■

Jenson also asserts that the injury alleged, emotional distress, is not an injury that is compensable under the WCA and therefore not subject to the exclusivity provision. Jenson's complaint asserts:

---

[5]The cases cited by the petitioner are largely irrelevant. *Dupler v. Seubert,* 69 Wis. 2d 373, 230 N.W.2d 626 (1975); *Weiler v. Herzfeld-Phillipson Co.,* 189 Wis. 554, 208 N.W. 599 (1926); *Evrard v. Jacobson,* 117 Wis. 2d 69, 342 N.W.2d 788 (Ct. App. 1983); *Buchholz v. Glass,* 180 Wis. 527, 193 N.W. 392 (1923). In none of these cases was the WCA discussed, and in the last case the employment clearly could not be WCA covered.

[6]Although plaintiff asserts that no intentional act which causes injury is encompassed within the remedy afforded by the WCA, we also note that plaintiff at one point in her brief distinguishes an injury caused by intentional conduct and a tort, such as the one alleged, where the conduct is undertaken with the intent to cause the particular injury—emotional distress. While such a distinction may be relevant in some legal settings, the distinction is irrelevant in Wisconsin worker's compensation jurisprudence. All of the cases cited in the preceding paragraph reveal facts where the apparent intent was to cause the particular injury, yet they were held to be within the purview of WCA.

Also, whether Little intended to cause the particular injury to Jenson is irrelevant under the Act, for, if the result—*i.e.,* the actual injury to Jenson—was unexpected by her, Wisconsin law defines such an event as an "accident." *John A. Kaiser Lumber Co. v. Industrial Comm.,* 181 Wis. at 515.

9. The aforesaid intentional, gross, extreme, and outrageous conduct of the defendant Guy Little Sr. is the direct and proximate cause of the extreme disabling emotional distress suffered by the plaintiff as herein described and the consequences thereof.

10. As the sole, direct, and proximate result of such course of conduct on the part of the defendant Guy Little Sr. the plaintiff has suffered extreme and disabling emotional distress including extreme anxiety and depression whereby the plaintiff has been deprived of her dignity as a person, has been rendered incapable, both emotionally and physically, from functioning in her vocational and nonvocational relationships, affairs, and pursuits of life, and has undergone and still undergoes severe and extreme mental and emotional pain, anxiety, and fear of such substantial quantity and enduring quality that no reasonable person could or should be expected to undergo the same. Further as the sole, direct, and proximate result of such conduct on the part of the defendant Guy Little Sr. the plaintiff has been and will be in the future obliged to undergo professional medical and psychological care, treatment, and attendance, and to take drugs, medications, and the like, and to pay and incur substantial expense therefor. By reason of the foregoing, the plaintiff has been damaged in a sum exceeding $500,000.00, no part of which has been paid.

The assertion of Jenson is that the injury she sustained was extreme and disabling emotional distress, an injury, she asserts, that is not compensable under the WCA. We conclude that it is. Injury under sec. 102.01(2)(c), Stats., includes "mental harm." It is further explained in the same subsection that: " 'Injury' *includes mental harm or emotional stress or strain without physical trauma, if it arises from exposure to conditions or circumstances beyond those common to occupa-*

*tional or nonoccupational life."*[7]

Thus, the injury is rather strangely defined. The injury must be an egregious one that is to be tested not by the severity of the distress or disabling manifestations but by the severity or traumatizing likelihood of the particular causative circumstances of employment. It is not an "injury" no matter how disabling unless it arises from unusual occupational stresses. This is more a rule of evidence that is geared to discovering the probability of harm than to discovering the fact of harm. It is in a sense an objective test—would a person of ordinary sensibilities be emotionally injured or mentally distressed in the absence of the unusual circumstances.

The applicable statute appears to be a codification of the *School District No. 1* case, wherein we said:

> Thus it is the opinion of this court that mental injury nontraumatically caused must have resulted from a situation of greater dimensions than the day-to-day emotional strain and tension which all employees must experience. Only if the "fortuitous event unexpected and unforeseen" can be said to be so out of the ordinary from the countless emotional strains and differences that employees encounter daily without serious mental injury will liability under ch. 102, Stats., be found.

62 Wis. 2d at 377–78.

That case, although not finding a compensable injury, carefully stated:

> In refusing to find the employer liable under ch. 102, Stats., in the instant action, however, we do not

---

[7]The quoted emphasized portion of sec. 102.01(2)(c), Stats., was removed by the legislative amendments in 1987, but is a part of the statute applicable to this case.

intend to close the door to those situations in which compensation may be warranted. We do not believe that an average man who, after being criticized and berated by an employer or whomever for a significant period of time, suffers a mental injury should be denied compensation. The common sense viewpoint of the average man would deem such a situation to be accidental and liability would be found under sec. 102.03(1)(a).

62 Wis. 2d at 378.

Two years later this court, following *School District No. 1,* in *Swiss Colony, Inc. v. ILHR Dept.,* 72 Wis. 2d 46, 240 N.W.2d 128 (1976), allowed compensation for the claimant's emotional distress, insomnia, exhaustion, and depression, and physical injury manifested by weight loss. The court, in accordance with the teachings of *School District No. 1,* found a compensable injury where it resulted from a situation of unusually greater stresses than the day-to-day mental stresses and tensions all employees must suffer. The crucial egregious conduct that impelled the award in *Swiss Colony* was the critical and berating attitude and abrupt, brusque criticism of a co-worker over a period of several months. It seems beyond argument that the alleged conduct of Little toward Jenson and the consistent statements of each of them in their affidavits fit squarely within the guidelines of *School District No. 1* and *Swiss Colony.* It is apparent that the injuries, and the manner in which they were allegedly inflicted, are compensable injuries under sec. 102.01(2)(c), Stats. The conditions to which Jenson was exposed were beyond those common to her occupational life. Her injury qualifies for coverage under the WCA.

269

Jenson additionally claims that her injury is not encompassed within the WCA because sec. 102.03(1)(c)1, Stats., requires that "at the time of the injury, the employe is performing service growing out of and incidental to his or her employment." The argument is that the injury must be inflicted at a time when Jenson is performing services or, as is asserted in her brief, the misconduct that led to the injury must be confined to the workplace or work hours. While the petitioner raises an interesting conceptual argument, clearly she misreads the statute. Nowhere is it a requirement that the wrongdoer be in the course of employment or even be a co-employee to entitle an injured employee to compensation. The argument is that Little slandered and berated Jenson on the streets when he was not in the course of his employment. That he did so is irrelevant. The court of appeals in *Rivera v. Safford,* 126 Wis. 2d 462, 377 N.W.2d 187 (1985), correctly pointed out that "it is clear that only the injured employee, and not the injuring coemployee need have been acting within the scope of his or her employment at the time of the injury."

The question presented, however, by this contention is whether the injured party, Jan Jenson, was performing services "growing out of and incidental to . . . her employment" at the time of injury.

The undisputed facts lead overwhelmingly to the conclusion that she was. The attacks upon her took place at village board meetings and in the confines of the village hall, where both worked. Petitioner cites to the record that attacks were made "immediately before the board meeting, immediately after the board meeting," as well as at the board meeting. It would appear from a common sense point of view these were times when Jenson, by virtue of her duty to be at the board meetings,

was performing services growing out of and incidental to her employment. Equally clear is the fact that the accident causing the injury arose out of Jenson's employment. Section 102.03(1)(e). It was only because of the village president's attack upon her work performance that the intentional act (accident) and injury to Jenson occurred. While it is asserted that Little had some animus toward Jenson because she "took" Little's daughter's boyfriend, no incident arose causing Jenson harm until after Little became village president and trustee and was able to attack her at work and in respect to her work performance. Only by the fact that she was performing services and Little was a co-employee was she vulnerable to the work-related attack. In any event, we have frequently held that the motive of the harasser is irrelevant. As this court said in *Nash-Kelvinator Corp. v. Industrial Comm.,* 266 Wis. 81, 86, 62 N.W.2d 567 (1954): "We are not concerned with the fomenting cause. Where the work environment is one of the causative factors . . . it is immaterial whether the motive is or is not work connected."

As referred to above, Jenson also makes the related argument that her claim is not work connected because it was the result of an attack personal to her—a personal vendetta against her by Little. We think this contention arises from a misunderstanding of the line of cases that hold there is no compensation for injuries or fatalities at the work place when the injury is the result of a condition personal to the worker—an idiopathic condition such as a heart attack from nonwork-related underlying causes.[8] Here, clearly the conduct of Little was integrally

---

[8]*See Cmelak v. Industrial Comm.,* 27 Wis. 2d 552, 556, 135 N.W.2d 304 (1965), which points out that the doctrine which requires that the force be not personal to the employee if there is

related to his conception of his duties as village president and his relationship to Jenson as a co-worker and a co-officer of the Village of Solon Springs. To use the language of *Kelvinator,* we can hold, as a matter of law, that Jenson's employment as village clerk-treasurer was one of the causative factors of the injury.

The final misdirected arrow from the bow of the petitioner is that, notwithstanding the fact the claim might otherwise be cognizable under the WCA, Little's conduct constituted an assault.

As stated above, prior to 1978, the WCA was not an injured employee's exclusive remedy against a *co*-employee. Then sec. 102.03(2), Stats., was amended to provide that a workers compensation claim could be asserted against co-employees. Simultaneously, the legislature set forth an exception that maintained the right in one circumstance for an employee to bring a common law action against a co-employee. The 1978 amendment provided: "This section does not limit the right of an employe to bring action against any coemploye for an assault intended to cause bodily harm." Sections 2 and 3, ch. 195, Laws of 1977, eff. Jan. 1, 1978.

Not only does the petitioner contend that Little's conduct was an assault, but also she asserts that any intentional conduct should be excepted from the WCA's exclusivity provisions as being tantamount to an assault. As demonstrated above, the mere fact that an act is intentional does not deprive it of its accidental nature

to be coverage under the WCA, simply means that the occurrence cannot be solely idiopathic. Here, of course, there is no contention of any idiopathic condition personal to Jenson. Moreover, as stated throughout this opinion, the conduct of Little and the effect that conduct had upon Jenson were both inextricably linked to the employment situation.

that makes it subject to the compensation act. In fact the public policy expressed by the legislature excepting an assault from the exclusivity provisions leads to the logical inference on the *exclusio* rationale that only that particular type of intentional conduct, an assault, is to be exempted.

There remains the question of whether Little's conduct constituted an assault.

The court of appeals, looking to the question whether Little's actions in berating and criticizing Jenson, constituted an assault intended to cause bodily harm, answered in the negative. We agree with that conclusion, but find the question to present greater difficulty than that recognized in the court of appeals opinion. That court resorted to prior criminal law cases and relied upon *Meyer v. Briggs,* 18 Wis. 2d 628, 630, 119 N.W.2d 354 (1963), which defined an assault as an "attempt, coupled with apparent and real present ability, to do bodily harm to another." Accordingly, the court of appeals, consistent with the undisputed fact that there was no present ability on the part of Little to do bodily harm to Jenson, concluded there was no assault and, hence, there was no exception from the exclusivity requirement. The logic of the court of appeals would lead to the conclusion that an actual battery could not be the subject of a common law cause of action.

While agreeing with the result of the court of appeals rationale, *i.e.,* that in this case there was no assault and, hence, no exception to the exclusivity of the WCA remedy, we are loath in this proceeding to intimate that an actual physical attack, a battery by a co-employee, that causes bodily harm is not exempt from the exclusivity provision.

As the petitioner points out, an ambiguous word in a statute is appropriately understood by resorting to a

standard dictionary definition. Petitioner cites the American Heritage Dictionary definition of "assault" as "a violent attack, either physical or verbal."

Webster's Third New International Dictionary defines the noun "assault" as a "violent attack with non-physical weapons (as words, arguments, or appeals)." It defines the verb "assault" to include "to attack violently by nonphysical means (as words, arguments, or unfriendly measures)."

The Random House Dictionary, however, defines "assault" as "1. a sudden, violent attack; onslaught . . . 2. An unlawful physical attack upon another; an attempt or offer to do violence to another, *with* or *without* battery, . . .." (Emphasis supplied.)

Thus, an assault in dictionary parlance may include a physical attack.

Our purpose, however, is to go beyond a pat definition of "assault," particularly when we find that dictionary definitions are contradictory. Our purpose is to determine, if possible, the legislature's intent. It is difficult to accept the court of appeals meaning that "assault" only means a threat to commit physical violence, but not to do physical violence. It would be absurd to hold that there could be an "assault" under the WCA that obviates the exclusivity rule but an actual battery or physical injury by a co-employee would not. Hence, it is necessary to explore the meaning of "assault" not in general legal connotations, or in dictionary terms, but in light of how the word "assault" has been used in the context of prior worker's compensation cases. In this light, it appears that the legislature did not intend to exclude a "battery" from the purview of the exception—that "assault" as used by the legislature included "battery."

An examination of WCA cases demonstrates that the term "assault" was used to describe factual situations giving rise to actions denominated as "assault and battery" or "battery." For example, in *Goranson v. ILHR Dept.*, 94 Wis. 2d 537, 556, 289 N.W.2d 270 (1980), "assault" is used in a manner compatible with there being an actual physical attack. In *Nash-Kelvinator Corp. v. Industrial Comm.*, 266 Wis. 81, 82, 62 N.W.2d 567 (1954), a physical ejection from the plant is referred to as an "assault." In *Allied Mfg., Inc. v. ILHR Dept.*, 45 Wis. 2d 563, 566, 173 N.W.2d 690 (1970), a fatal stabbing is referred to as an "assault."

While we do not quarrel with the result reached by the court of appeals, concluding that the conduct in this case was not an assault, the acceptance of the court of appeals reasoning and the definition employed would result in not excepting from the exclusivity rule an assault and battery—a result that the legislature most likely did not intend. We think it inappropriate to conclude, as the inexorable logic of the court of appeals would dictate, that an assault and battery would not avoid the exclusive remedy but a simple nonphysical assault would. Here, however, there was neither. As the court of appeals concluded, there was no assault, and there certainly was no battery. We are not compelled in this case to delineate all the parameters of the legislature's intent in using the term "assault." We doubt, however, in view of prior WCA case law, that the only way to avoid the exclusivity clause is simple assault.[9]

---

[9] While many batteries are preceded with an assault—a real threat to do bodily harm, some batteries may be out of the blue. Under the legislative intent, as explicated by past case law, such a battery, in the legislature's parlance, may be an assault.

275

■

In fine it would appear that, at the very least, "assault intended to cause bodily harm" must be more than verbal; it must be physical. To that extent, we agree with the court of appeals. We conclude, however, that that court's analysis would preclude from a common law remedy areas of harm inflicted by a co-employee that the legislature may well have intended to include.

In the instant case the alleged conduct of Little did not constitute an assault upon Jenson under any of the possible definitions.

■

We conclude, therefore, that the allegations of the complaint set forth facts that state a claim for compensation under the WCA and that there are no material issues of fact that would preclude the grant of summary judgment to the defendant. We hold, as a matter of law, that the conduct of Little did not constitute an assault which would permit an employee to bring a common law cause of action against a co-employee and not be limited exclusively to remedies afforded by the WCA. Under the undisputed facts, the trial court properly granted summary judgment.

*By the Court.*—Decision affirmed.