**Cherie J. HIBBEN, Plaintiff–Appellee,**

v.

**S. Sam NARDONE, Defendant–Appellant.**

No. 97–1793.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 10, 1997.

Decided Feb. 20, 1998.

Rehearing and Suggestion for Rehearing
En Banc Denied April 23, 1998.

Charles H. Barr (argued), Croen & Barr, Milwaukee, WI, for Plaintiff–Appellee.

Shelly A. Ranus (argued), Krukowski & Costello, Milwaukee, WI, for Defendant–Appellant.

Before CUDAHY, FLAUM and MANION, Circuit Judges.

MANION, Circuit Judge.

Cherie Hibben worked for TLC Services, Inc. (TLC) as a salesperson; S. Sam Nardone was the president of TLC and her supervisor. When Hibben was in the office, Nardone sexually harassed her repeatedly. Eventually Hibben resigned, and then sued TLC for sex discrimination under Title VII and TLC and Nardone for intentional infliction of emotional distress. A jury found TLC liable, but TLC went bankrupt and does not appeal. The jury also found Nardone liable and awarded Hibben $25,000 in compensatory damages and $300,000 in punitive damages. Because the state law tort claim for intentional infliction of emotional distress is barred by the exclusivity provision of the Wisconsin Worker's Compensation Act, we reverse.

## I.

S. Sam Nardone was the principal executive and majority shareholder of TLC Services, Inc., a trucking company based in Milwaukee, Wisconsin. Nardone, along with his wife, a vice president of the corporation, and son, owned over 99% of the corporation. In addition to being in charge of the company, he also displayed crude and unusual behavior with some of his employees. Cherie Hibben. began work at TLC in May, 1993. Almost immediately, Nardone began sexually harassing her. His conduct consisted of vulgar and tasteless remarks directed at Hibben's physical appearance and sex life, his own sexual proclivities, and sexual propositions. As a result of this conduct, Hibben was embarrassed and humiliated, became depressed, and withdrew from her family. Hibben continued working for TLC until April 1994, when she resigned and immediately went to work for another company.

In May 1995, Hibben sued TLC for sexual harassment and retaliation under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*, and for intentional infliction of emotional distress under Wisconsin's common law. She also sued Nardone for intentional infliction of emotional distress. Nardone countersued Hibben for defamation.

In April 1996, Nardone sought summary judgment on Hibben's claim of intentional infliction of emotional distress. He argued that Hibben's exclusive remedy for this state law tort claim was under the Wisconsin Worker's. Compensation Act. In October 1996, the district court denied Nardone's motion for summary judgment.[1] At the same time, the judge granted Hibben's motion for partial summary judgment, holding that TLC would be liable for Title VII or state law torts committed by Nardone. On December 2, 1996, the day before trial was scheduled, TLC filed for chapter 7 bankruptcy protection. After an emergency hearing, the bankruptcy judge modified the automatic stay to allow the trial to proceed. 11 U.S.C. § 362. The case was tried to a jury, and the jury found TLC liable for sexual harassment under Title VII and the state law claim for intentional infliction of emotional distress. It also found Nardone liable for intentional infliction of emotional distress. The jury awarded Hibben $25,000 in compensatory damages and $100,000 in punitive damages against TLC, and $25,000 in compensatory damages and $300,000 in punitive damages against Nardone. Nardone appeals, but the bankruptcy estate of TLC did not. Thus, the only issue on appeal is the intentional infliction of emotional distress claim brought against Nardone.

## II.

Nardone argues that the tort of intentional infliction of emotional distress is barred by the Wisconsin Worker's Compensation Act (WCA), which provides the exclusive remedy for certain injuries sustained at the workplace. Wis. Stat. § 102.03. Thus, the Act applies to a claim by an employee who sustains an "injury." Wis. Stat. § 102.03(1). Assuming that the Act applies to that particular injury, "the right to the recovery of compensation under [the WCA] shall be the exclusive remedy against the employer, any other employee of the same employer and the worker's compensation insurance carrier." Wis. Stat. § 102.03(2). "Injury" is defined under the WCA as "mental or physical harm to an employee caused by accident or disease." Wis. Stat. § 102.01(2)(c). Thus, applying these definitions, if mental harm occurs because of an accident, and in all other aspects the accident is covered by the Act, the WCA provides the exclusive remedy for that injury.[2]

1. We note that Nardone did not attach the district court's decision denying this motion for summary judgment to his appellate brief as required by Rule 30 of the Federal Rules of Appellate Procedure and our Circuit Rule 30. Omitting these materials hinders this court and may lead to sanctions or summary affirmance. *See United States v. Evans,* 131 F.3d 1192, 1194 (7th Cir.1997); *In re Galvan,* 92 F.3d 582, 584–85 (7th Cir.1996) (noting that an appellant who fails to attach the district court's order risks being sanctioned). Moreover, the short appendix did not include a certifying statement that materials required to be in the short appendix were included in the short appendix. Circuit Rule 30(c).

2. The WCA creates other requirements for the Act to apply, such as that the injury was not intentionally self-inflicted, that the injury arose out of the employee's employment, and that at

■ The parties dispute whether the injury suffered by Hibben was the result of an "accident" as the term is used in the WCA. This is a question of Wisconsin state law. We review the denial of a motion for summary judgment *de novo*. In deciding state law issues, we apply the law as the Wisconsin Supreme Court would. *McGeshick v. Choucair*, 9 F.3d 1229, 1232 (7th Cir.1993).

In *Jenson v. Employers Mut. Cas. Co.*, 161 Wis.2d 253, 468 N.W.2d 1, 5–6 (1991), the Wisconsin Supreme Court addressed the application of the exclusivity provision of the WCA to torts involving intentional infliction of emotional distress. Jenson was a village secretary/treasurer who was harassed by the village president.[3] She sued the village president (and his insurers) for intentional infliction of emotional distress. Addressing the WCA, Wisconsin's highest court defined accident as "a fortuitous event unexpected or unforeseen by the injured person, even though the injury is intentionally inflicted by another." *Id.*, 468 N.W.2d at 5.

> We conclude, based on prior holdings of this court and of the court of appeals, that injuries that are caused by intentional conduct may lie within the purview of "accident" under the WCA and may constitute compensable injuries under the WCA, for which compensation may not be denied merely because they are intentionally inflicted. The argument of Jenson is that ... the injury cannot be a harm caused by accident if it is inflicted with intent. While there is more than a modicum of common sense in that assertion, our case law leads to the contrary conclusion.

*Id.* at 5. Moreover, its analysis emphasized that whether the conduct is intentional depends on the perspective of the injured party. *Id.* at 5–6. The Wisconsin Supreme Court held that "Jenson asserts that [the village president] intentionally caused her injuries. *As a matter of law* we conclude such

conduct constitutes an accident as the term is used under the provisions of the WCA." *Id.* at 6 (emphasis added).

■ Applying *Jenson* here, the harassment Nardone inflicted on Hibben was an "accident." From Hibben's perspective, it was not expected or foreseeable that she would suffer sexual harassment in her position at TLC. But Hibben insists that Nardone's sexual harassment became foreseeable. Even if so, the Wisconsin Supreme Court's holding in *Jenson* specified that, as a matter of law, intentional infliction of emotional distress qualifies as an accident. Because intentional infliction of emotional distress is an "accident," the WCA applies to Hibben's injury, and her tort claim is barred by the exclusivity provisions.

Hibben argues that *Jenson* is distinguishable from this case, and that we should instead follow the Wisconsin Court of Appeals' decision in *Lentz v. Young*, 195 Wis.2d 457, 536 N.W.2d 451 (1995). *Lentz* held that an employer's intentional infliction of emotional distress through sexual harassment is not barred by the exclusivity clause of the WCA. *Lentz* distinguished *Jenson* on two grounds: *Lentz* involved an employer (sole proprietor); *Jenson* involved a co-employee. Additionally, *Lentz* distinguishes intentional infliction of emotional distress caused by sexual harassment from other forms of intentional infliction of emotional distress.

TLC is clearly the employer here, leaving Hibben and Nardone as co-workers under the law. But if we were to label Nardone as an employer, as the district court did, and not a co-employee, hypothetically, at least, this case would be factually similar to *Lentz*.[4] Although *Lentz* appears to be an isolated opinion, because it is Hibben's best authority we will examine it to determine whether there is good cause to believe the Wisconsin Supreme Court would follow it. *McGeshick*, 9 F.3d at 1232.

---

the time of injury, the employee was performing services incidental to his or her employment. Wis. Stat. § 102.03. None of these additional requirements are at issue in this case.

3. The Supreme Court characterized the village president as a co-employee, not an employer. 468 N.W.2d at 5.

4. Whether Nardone was an employer or employee does not appear to be relevant under Wisconsin law. Even if we treat Nardone as an employer, the result is the same.

*Lentz* raises several significant questions with its analysis. First, it does not discuss a fundamental change in Wisconsin law. Prior to 1978, the WCA applied only to employers. *Jenson*, 468 N.W.2d at 5. In 1978, the Wisconsin Legislature amended the WCA to apply to both employers and co-employees *Id.* The statute now provides that it "shall be the exclusive remedy against the employer [and] any other employee of the same employer...." Wis. Stat. § 102.03(2). The addition of co-employees to the scope of the WCA widens the scope of the statute such that the WCA would have the same limitations applied to claims against co-employees as it would against employers.[5] Hibben has not claimed that she was physically assaulted, or even touched, by Mr. Nardone.[6] Yet it appears that Lentz and now Hibben attempt to distinguish Jenson by claiming that if the offender is an employer rather than a co-employee, the injury is not covered under the WCA.

*Lentz* further isolates itself by declining to follow the definition of "accident" specifically established by the Wisconsin Supreme Court in *Jenson*. *Lentz* first looks at the dictionary definition of accident, and then because *Jenson's* definition is different, concludes that "accident" is ambiguous and resorts to case law from other states to determine the meaning of accident. 536 N.W.2d at 456. We believe the Wisconsin Supreme Court would not adopt the *Lentz* conclusion that the term "accident" is ambiguous. *Jenson* already resolved any ambiguity with regard to meaning of the term "accident." In fact, the concurring judge in *Lentz* criticizes his colleagues' disregard for *Jenson*.

In *Jenson,* our supreme court specifically defined the term accident as used in the WCA. The court concluded the term accident must be determined from the perspective of the injured employee, not from the perspective of the person causing the injury. However, the majority in our case now redefines the term accident and views this determination from the perspective of the person causing the injury, namely the employer. This is exactly the opposite of what our supreme court did in *Jenson*. It is not sufficient to say that *Jenson* involved a co-employee situation and therefore the case is distinguishable. The term accident cannot have two different meanings within the same sentence of the same statute.

*Id.*, 536 N.W.2d at 458 (Cane, J., concurring) (citations omitted).

Finally, *Lentz* purports to create an exception to *Jenson* for sexual harassment. *Id.*, 536 N.W.2d at 457 (employer's intentional conduct not an accident "at least to the extent that such intentional conduct involves sexual harassment."). It bases this decision on public policy grounds, drawn from the law of other states. *Id.* However, we disagree that the Wisconsin Supreme Court would find this public policy persuasive. Recently, the Wisconsin Supreme Court commented on the public policy behind the Worker's Compensation Act:

The WCA provides an alternative to tort liability, making employers strictly liable for injuries encompassed within the Act, but limiting the liability to compensation established by statute. *County of La Crosse*, 182 Wis.2d [15,] 30 and n. 4, 513 N.W.2d 579 (quoting *Guse v. A.O. Smith Corp.*, 260 Wis. 403, 406–07, 51 N.W.2d 24 (1952)). Under this compromise, employees are assured smaller but more certain recoveries than might be available in tort actions, while employers are freed from the risk of large and unpredictable damage awards. The court has recently stressed that courts must "exercise care to avoid

5. Other sections of the Act reinforce the conclusion that Wis. Stat. § 102.03(2) would apply the same to employers and co-employees. At the time the legislature amended the WCA to apply to co-employees, it carved out a specific exception: The Act does not apply to an employee physically assaulted by a co-employee with the intent to cause bodily harm. *Id.* This is the sole distinction between employers and co-employees found in the WCA.

6. Wisconsin generally recognizes the principle of *inclusion unius est exclusio alterius* (the inclusion of one exception implies that all other exceptions are excluded). *Jadair Inc. v. United States Fire Ins. Co.*, 209 Wis.2d 187, 562 N.W.2d 401, 407 (1997). We believe that the Wisconsin Supreme Court would hold that there are no statutory grounds upon which to distinguish the sexual harassment of an employer from the sexual harassment of a co-employee.

upsetting the balance of interests achieved by the WCA." *Weiss v. City of Milwaukee,* 208 Wis.2d 95, 102, 559 N.W.2d 588, 591 (1997) (citing *County of La Crosse,* 182 Wis.2d at 30, 513 N.W.2d 579).

*Byers v. Labor & Indus. Review Comm.,* 208 Wis.2d 388, 561 N.W.2d 678, 681 (1997). The problem with *Lentz's* public policy argument is that the Wisconsin Supreme Court's analyses in *Jenson, Weiss,* and *Byers* simply provide no basis for us to expect it to create a public policy exception to exclusivity in the case of sexual harassment or emotional distress (or other common law torts for that matter).

*Lentz* is unique because the offender was a sole proprietor, and therefore the employer. Here TLC, not Nardone, is clearly the employer, although the distinction does not appear to be relevant under the WCA. Nardone is a co-employee. We need not resolve whether *Lentz* was correctly decided under its unique facts; because Nardone was a co-employee, *Jenson* controls and the emotional distress Nardone caused is covered exclusively by the WCA.

Recently this court examined the WCA in *Johnson v. Hondo, Inc.,* 125 F.3d 408 (7th Cir.1997), which involved an employee's sexual harassment claim against a co-employee. There we noted that the Wisconsin Supreme Court has repeatedly held that § 102.03(2) precludes an injured employee from maintaining a negligence action against his or her employer and fellow employee. Citing *Jenson,* we went on to say that "the Wisconsin Supreme Court has clearly stated that 'injuries that are caused by intentional conduct may lie within the purview of "accident" under the [WCA] and may constitute compensable injuries under the [Act]' and has expressly held that claims of intentional infliction of emotional distress are barred by § 102.03(2)." *Id.* at 418 (citations omitted). Just as *Jenson* applied to the claim in *Johnson,* we have every reason to believe that the Wisconsin Supreme Court would also confine Hibben's claim for intentional inflic-

tion of emotional distress to the exclusive protection of the WCA.

Given our conclusion that Hibben's claim of intentional infliction of emotional distress is barred by the exclusivity provision of the WCA, we need not address other arguments raised by Nardone on appeal.

### III.

Hibben's claim for intentional infliction of emotional distress is barred by the exclusivity clause of the WCA. We believe the Wisconsin Supreme Court would reach this result if it had the opportunity, and Wisconsin Supreme Court precedent and Seventh Circuit precedent both support this result. Needless to say, we certainly do not condone the conduct of the defendants in this case. Nevertheless, because this is the only claim brought against Nardone, the decision of the district court is REVERSED, and the matter is REMANDED to the district court, with instructions to enter judgment for the defendant.