Caroline L. PETERSON, Plaintiff-Appellant,†

v.

ARLINGTON HOSPITALITY STAFFING, INC., f/k/a Ameri-host Staffing, Inc., Defendant-Respondent.

Court of Appeals

*No. 03–2811. Submitted on briefs August 11, 2004.—Decided September 22, 2004.*

2004 WI App 199

(Also reported in 689 N.W.2d 61.)

† Petition to review denied 12-17-2004.

746

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Leonard W. Schulz* of *Law Offices of Leonard W. Schulz*, Big Bend.

On behalf of the defendant-respondent, the cause was submitted on the brief of *David J. Farley* and *Patrick D. McNally* of *Borgelt, Powell, Peterson & Frauen, S.C.*, Milwaukee.

Before Anderson, P.J., Brown and Nettesheim, JJ.

¶ 1. ANDERSON, P.J. The sole issue on appeal is whether we should create an exception to WIS. STAT.

§ 102.03(2) (2001–02),[1] the exclusive remedy provision of the Worker's Compensation Act (WCA), for a claim by an employee against an employer for negligent hiring, training and supervision when the injury is a sexual assault committed by a coemployee. We hold that the WCA's purpose, history and application do not support the judicial fashioning of such an exception and, therefore, the exclusive remedy provision bars Caroline L. Peterson's claim. We also reject Peterson's constitutional challenge to the WCA. Accordingly, we affirm the circuit court's order for judgment granting Arlington Hospitality Staffing, Inc., f/k/a Amerihost Staffing, Inc.'s motion for summary judgment.

## BACKGROUND

¶ 2. The facts are undisputed and brief. On March 20, 2000, Peterson was an employee at a hotel in Whitewater that was owned and operated by Arlington. While working at the hotel, she was sexually assaulted by Victor Murph, another Arlington employee at the same hotel. Murph had a lengthy history of criminal behavior.

¶ 3. In the spring of 2003, Peterson commenced an action against Arlington,[2] alleging that Arlington knew or should have known that Murph "had previous incidents of sexual assaults and despite [his] past experiences, employed him without advising [Peterson] or other employees of his past history." She claimed that

---

[1] All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

[2] Peterson initially filed a complaint on March 19, 2003, naming Amerihost as the defendant. On April 8, 2003, she filed an amended complaint, which noted that Amerihost was now doing business as Arlington.

Arlington "was negligent in not advising [her] of [Murph's] propensities and past experiences when [Arlington] and its agents, servants and employees knew, or should have known, of his past history." Peterson further alleged that as a result of the sexual assault, she sustained mental anguish and harm requiring medical treatment and causing wage loss and permanent injury.

¶ 4. On July 23, 2003, Arlington moved for summary judgment, arguing that WIS. STAT. § 102.03(2), the exclusive remedy provision of the WCA, barred Peterson's claims. Peterson filed a brief in opposition to the motion for summary judgment and a motion to amend her complaint to add a claim of negligent hiring, training and supervision against Arlington. The court granted Arlington's motion for summary judgment, concluding that Peterson's claim was covered by the WCA and therefore precluded by the WCA's exclusive remedy provision. Peterson now appeals.

### STANDARD OF REVIEW

■

¶ 5. We review summary judgment decisions de novo, applying the same methodology as the circuit court. *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315–17, 401 N.W.2d 816 (1987). That methodology is well established and need not be repeated here. *See, e.g., Lambrecht v. Estate of Kaczmarczyk*, 2001 WI 25, ¶¶ 20–24, 241 Wis. 2d 804, 623 N.W.2d 751. It is sufficient to say that summary judgment is appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Green Spring Farms*, 136 Wis. 2d at 315. Additionally, we note that whether a claim is subject to the exclusive remedy provision of the WCA is a question of law which is reviewed de novo. *Lentz v. Young*, 195 Wis. 2d 457,

468, 536 N.W.2d 451 (Ct. App. 1995). Finally, the constitutionality of a statute is also a question of law that we review de novo. *State v. Borrell*, 167 Wis. 2d 749, 762, 482 N.W.2d 883 (1992).

## DISCUSSION

■

¶ 6. Peterson contends that the WCA's exclusive remedy provision, WIS. STAT. § 102.03(2), should not preclude a claim by an employee against an employer for negligent hiring, training and supervision when the injury is a sexual assault committed by a coemployee.[3] Peterson recognizes that, by its plain language, § 102.03(2) bars her negligent hiring, training and supervision action, and, therefore, urges this court to create a public policy exception to the clause. She asserts that sound public policy and our decision in *Lentz* demand that we judicially fashion an exception to the clause for a negligence claim involving a sexual assault by a coemployee. She also contends that the application of § 102.03(2) to her claim violates her rights to due process and equal protection. We address each argument in turn.

---

[3] WISCONSIN STAT. § 102.03(2) provides:

(2) Where such conditions exist the right to the recovery of compensation under this chapter shall be the exclusive remedy against the employer, any other employee of the same employer and the worker's compensation insurance carrier. This section does not limit the right of an employee to bring action against any coemployee for an assault intended to cause bodily harm, or against a coemployee for negligent operation of a motor vehicle not owned or leased by the employer, or against a coemployee of the same employer to the extent that there would be liability of a governmental unit to pay judgments against employees under a collective bargaining agreement or a local ordinance.

## Public Policy Exception

¶ 7. For her part, Peterson presents seven public policy reasons in favor of the creation of an exception to WIS. STAT. § 102.03(2) for sexual assault by a coemployee. We list them here to provide the context for our discussion.

¶ 8. First, she argues that the WCA does not afford her an adequate remedy because it is not designed to deal with the emotional damage and mental anguish caused by sexual assault. Second, Peterson submits that the WCA is a legislative compromise intended to benefit both the employer and the employee, but if she is not permitted to pursue her negligence claim, then "all of the benefits would flow toward the employer." In other words, Arlington is insulated from a substantial tort award, while Peterson receives only nominal compensation. Third, Peterson argues that allowing the exclusivity provision to shield Arlington from tort liability for her injuries will effectively permit Arlington and other employers to carelessly hire with impunity any employee regardless of his or her background.

¶ 9. Fourth, application of the exclusive remedy provision in this matter disrupts the legislature's intention to place the ultimate financial burden for an employee's injury on the employer or consumer. Fifth, she argues that her action arises not out of the employment relationship, but rather out of Arlington's independent duty to use reasonable care in the hiring and screening process. Sixth, she maintains that the positional risk doctrine should not apply to bar negligence claims by an employee in cases where the employer "actually create[s] the risk itself." Finally, Peterson suggests a compromise. She maintains that while her

752

damages for her physical trauma and wage loss should be kept within the worker's compensation system, she should be permitted to seek damages for her emotional trauma and mental anguish.

¶ 10. While each of Peterson's enumerated policy considerations may be valid, we are not in a position to write an exception into the WCA. The WCA's history, purpose and application demonstrate that the decision to create an exception to the statute is best reserved for the legislature.

¶ 11. The WCA was passed in 1911. *Byers v. LIRC*, 208 Wis. 2d 388, 395, 561 N.W.2d 678 (1997). The WCA represents the legislative compromise between the interests of employers, employees and the public in resolving compensation disputes regarding work-related physical or mental harms arising in our industrial society. *Henning v. Gen. Motors Assembly Div.*, 143 Wis. 2d 1, 11, 419 N.W.2d 551 (1988); *State v. LIRC*, 136 Wis. 2d 281, 286–87, 401 N.W.2d 585 (1987); *Jenkins v. Sabourin*, 104 Wis. 2d 309, 322, 311 N.W.2d 600 (1981). When it enacted the WCA and the exclusivity provision, the legislature had the ability through research facilities and public hearings to determine the facts that were relevant to the competing interests that may be implicated when an employee is injured in the course of his or her employment. *Mulder v. Acme-Cleveland Corp.*, 95 Wis. 2d 173, 188, 290 N.W.2d 276 (1980).

¶ 12. The legislature resolved the conflict among these interests by establishing a system under which workers, in exchange for compensation for work-related injuries regardless of fault, would relinquish the right to sue employers and would accept smaller but more certain recoveries than might be available in a tort action. *County of La Crosse v. WERC*, 182 Wis. 2d 15, 30, 513 N.W.2d 579 (1994). As an alternative to liability

in tort, employers would pay a fixed amount and would relinquish their common-law defenses to tort actions for work-related personal injuries. *Id.*; *see also Guse v. A. O. Smith Corp.*, 260 Wis. 403, 406–07, 51 N.W.2d 24 (1952) ("In enacting the act, the legislature intended to impose upon employers an absolute liability, regardless of fault; and in return for this burden, intended to grant employers immunity from all tort liability on account of injuries to employees."); *Vick v. Brown*, 255 Wis. 147, 153, 38 N.W.2d 716 (1949) ("[The employer's liability] is solely under the Workmen's Compensation Law. There is no liability in tort."). The exclusive remedy provision was part of the original enactment and is an integral feature of the compromise between the interests of the employer and the interests of the worker. *County of La Crosse*, 182 Wis. 2d at 30.

¶ 13. Pursuant to Wis. Stat. § 102.14(2), amendments to the WCA are proposed by the Worker's Compensation Advisory Council. The advisory council consists of representatives of each of the competing interests implicated by the WCA: five labor representatives, five industry representatives, three nonvoting insurance representatives, and a Department of Workforce Development employee designated to serve as chairperson. *See* Wis. Stat. § 15.227(4); Wis. Stat. § 102.03(2).

¶ 14. Thus, the WCA stands as an evolving public policy decision arrived at by the legislature after weighing the competing policy considerations now presented by the representatives on the advisory council. We have repeatedly stated that the provisions of the WCA must be liberally construed to effectuate the statute's goal of compensating injured workers. *UFE Inc. v. LIRC*, 201 Wis. 2d 274, 288, 548 N.W.2d 57 (1996); *Nigbor v. DILHR*, 120 Wis. 2d 375, 382, 355 N.W.2d 532 (1984);

*Cruz v. DILHR*, 81 Wis. 2d 442, 450, 260 N.W.2d 692 (1978). However, more importantly, we must also exercise care to avoid upsetting the balance of interests achieved by the WCA. *Weiss v. City of Milwaukee*, 208 Wis. 2d 95, 102, 559 N.W.2d 588 (1997).

¶ 15. As evidenced by our discussion, the balance of policy considerations embodied in the WCA centers on the relinquishment of rights of action in tort. *See County of La Crosse*, 182 Wis. 2d at 31; *see, e.g., Coleman v. Am. Universal Ins. Co.*, 86 Wis. 2d 615, 621, 273 N.W.2d 220 (1979); *Guse*, 260 Wis. at 408. Indeed, the compromises obtained would not have been possible if employers could still face tort actions from an injured employee. Were we to adopt a public policy exception for Peterson's claim against Arlington, we would potentially upset the delicate balance of interests the legislature and members of the advisory council have striven to achieve. This we are instructed not to do. *See Weiss*, 208 Wis. 2d at 102 (stressing that courts are not to disrupt the balance achieved by the WCA). *See also Pollack v. Calimag*, 157 Wis. 2d 222, 235, 458 N.W.2d 591 (Ct. App. 1990) (where the statutory language is clear, "[W]e are bound by it and changes in it are for the legislature, not this court."). The legislature with its input from the experts on the advisory council and the public is in a far better position than this court to fashion a public policy exception to the exclusivity provision. Accordingly, we decline Peterson's invitation to carve out an exception to the exclusivity provision in the WCA for her claim of negligent hiring, training and supervision of a coemployee who committed sexual assault.

¶ 16. Peterson asks us to pattern this opinion after *Lentz*, a case in which we purportedly created an exception to the exclusivity clause for claims of sexual harassment. *Lentz*, however, is a unique case that must be confined to its facts.

¶ 17. In *Lentz*, we addressed the application of the exclusivity provision of the WCA to an employee's claim of intentional infliction of emotional distress caused by the sexual harassment of an employer. *Lentz*, 195 Wis. 2d at 468–73. The employee claimed that because her injuries resulted from her employer's intentional conduct, her injuries were not an "accident" within the purview of the WCA and therefore the exclusivity clause did not preclude her tort claim. *Id.* at 468. We held that "where an employer injures an employee through his or her intentional conduct, the injury is not an 'accident' under the WCA, at least to the extent that such intentional conduct involves sexual harassment." *Id.* at 472.

¶ 18. In reaching our conclusion, we rejected the employer's claim that *Jenson v. Employers Mutual Casualty Co.*, 161 Wis. 2d 253, 276, 468 N.W.2d 1 (1991) (concluding that the term "accident" included injuries that an employee sustains from intentional conduct by another coemployee), militated against creating an exception to exclusivity. *Lentz*, 195 Wis. 2d at 469–72. We distinguished *Jenson* on the ground that *Jenson* involved intentional conduct by a coemployee and not an employer. *Lentz*, 195 Wis. 2d at 470. We explained:

> Further, we note that allowing employers to use the WCA to shield themselves from liability for intentional acts would exceed the purpose of the WCA .... When an employer intentionally injures an employee, it is not

appropriate to allocate the financial burden associated with that injury to the public. Rather, the burden of compensating the employee for the consequences of the intentional act should lie exclusively with the employer. This is particularly true with regard to sexual harassment cases. In such cases, the physical injuries and medical costs arising from the conduct are frequently nominal. Therefore, to adequately compensate the employee for his or her injuries, it is necessary that the employee be able to pursue damages, including punitives, through a civil action. Without such recourse, there is no effective means of protecting employees from their employer's intentional conduct.

*Id.* at 472 (citation omitted).

¶ 19. Recently, in *Hibben v. Nardone*, 137 F.3d 480 (7th Cir. 1998), the Seventh Circuit had the opportunity to interpret *Lentz*. There, the court refused to apply the *Lentz* exclusivity exception to an employee's claim against her supervisor for intentional infliction of emotional distress caused by a coemployee. *Hibben*, 137 F.3d at 480, 484. The court distinguished its decision from *Lentz* by underscoring the fact that in *Lentz* the offender was the sole proprietor and therefore the employer. *Hibben*, 137 F.3d at 484. The court determined that where a coemployee commits the intentional act, rather than a sole proprietor, *Jenson* controls and the exclusivity provision applies. *See Hibben*, 137 F.3d at 484.

¶ 20. The *Hibben* court's conclusion is logical.[4] *Lentz* presented a unique situation because the offender

---

[4] As Peterson correctly observes, we are not bound by the Seventh Circuit's analysis. However, we may, as we do here, seek guidance in the persuasive authority of other jurisdictions. *See Alberte v. Anew Health Care Servs., Inc.*, 2000 WI 7, ¶ 7, 232 Wis. 2d 587, 605 N.W.2d 515.

was a sole proprietor, and therefore, the employer. Our holding simply conveyed our concern that a sole proprietor would be able to use the WCA as a shield to protect himself or herself from liability for intentional acts against an employee. This concern, however, is not present when, as here and in *Hibben*, it is a coemployee who has committed the intentional tort. While employers are protected from liability in tort, the exclusivity provisions specifically permit injured employees to pursue tort actions against coemployees whose intentional conduct causes their injuries. WIS. STAT. § 102.03(2). *Lentz*, therefore, must be limited to its facts. It is simply a narrow exception that applies when the employer is a sole proprietor and has intentionally caused the employee's injury.

¶ 21.　In this case, we are not dealing with an employer's intentional acts of sexual assault. Rather, Murph, a coemployee, committed the intentional act. Accordingly, *Lentz*'s narrow exception is inapplicable. Because we otherwise reject Peterson's entreaty to fashion a public policy exception, the exclusivity provision controls and bars her negligence claim against Arlington.

### *Constitutional Claims*

¶ 22.　Finally, Peterson intimates that the application of the exclusive remedy provision violates her due process and equal protection rights. She claims that the application of the exclusive remedy provision creates an arbitrary and unequal situation:　a third party sexually assaulted by Murph would have access to a tort action. When statutes are challenged on grounds of due process, the "test is whether the means chosen have a reasonable and rational relationship to the purpose or

758

object of the enactment; if it has, and the object is a real and proper one, the exercise of the police power is valid." *Kahn v. McCormack*, 99 Wis. 2d 382, 385, 299 N.W.2d 279 (Ct. App. 1980) (citation omitted). A similar test is applied to an equal protection challenge. A challenged classification

> will be sustained if there is a reasonable and practical ground for the classification, even though some other classification might appear to be more in accord with general welfare. If the classification is reasonable and practical in relation to the objective, that is sufficient and doubts must be resolved in favor of the reasonableness of the classification.

*Id.* at 385–86 (citation omitted).

■

¶ 23. By challenging the statute on a constitutional basis, the burden upon Peterson is to establish beyond a reasonable doubt that the WCA, and our asserted construction of it, is unconstitutional. *See Mulder*, 95 Wis. 2d at 187. The nature of that burden was explained in *State ex rel. Hammermill Paper Co. v. La Plante*, 58 Wis. 2d 32, 46, 205 N.W.2d 784 (1973). Therein our supreme court stated:

> It is not enough that respondent establish doubt as to the act's constitutionality nor is it sufficient that respondent establish the unconstitutionality of the act as a probability. Unconstitutionality of the act must be demonstrated beyond a reasonable doubt. Every presumption must be indulged to sustain the law if at all possible and, wherever doubt exists as to a legislative enactment's constitutionality, it must be resolved in favor of constitutionality. This court has often affirmed the well-established presumption of constitutionality that attaches itself to all legislative acts.

*Id.*

¶ 24. Peterson has not met her heavy burden of proving the statute unconstitutional beyond a reasonable doubt. The constitutionality of the WCA, including its exclusivity provision, has long been established and has been repeatedly upheld. *Messner v. Briggs & Stratton Corp.*, 120 Wis. 2d 127, 132, 353 N.W.2d 363 (Ct. App. 1984); *see also Oliver v. Travelers Ins. Co.*, 103 Wis. 2d 644, 651–53, 309 N.W.2d 383 (Ct. App. 1981); *Borgnis v. Falk Co.*, 147 Wis. 327, 367, 133 N.W. 209 (1911). Put simply, the rational basis for the legislature's enactment of Wis. Stat. § 102.03(2) is that it preserves the previously explained quid pro quo nature of the worker's compensation scheme. *See Oliver*, 103 Wis. 2d at 653. The multiple and protracted lawsuits in circuit courts which would ensue if employers were exposed to tort claims for the intentional conduct of other employees would emasculate the WCA and adversely affect employers, employees and the public. We therefore hold that the exclusivity provision comports with the essentials of due process and equal protection; it furthers a long-established, comprehensive legislative scheme, and it is reasonable.

## CONCLUSION

¶ 25. In sum, we hold that Peterson's claim of negligent hiring, training and supervision against Arlington for injuries caused by the sexual assault of her coemployee is precluded by the exclusivity provision in Wis. Stat. § 102.03(2). The WCA's purpose, history and application demonstrate that we are not the proper authority to create a public policy exception to the WCA's exclusivity provision. We also conclude that § 102.03(2) does not violate Peterson's rights to equal

protection and due process. Accordingly, we affirm the circuit court's order granting summary judgment in favor of Arlington.

*By the Court.*—Order affirmed.